## Taylor *v.* Haverford Township, Appellant.

Argued January 14, 1930.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Harold L. Ervin,* of *Lutz, Ervin, Reeser & Fronefield,*
for appellant.—The people of this community have de-
veloped a place of beauty and security for the rearing
of their families and their own personal enjoyment.
Clearly, if there is a home community that merits the
protection of the municipal authorities for the preserva-
tion of the home from the intrusion of business, this
particular section of Llanerch and Llanerch Estates is
such a community.   To require appellee to use his land
to conform with the use of that immediately across Lans-
downe Road and Park Road, will not work any peculiar

hardship on him: Euclid & Ambler Realty Co., 272 U. S. 365; Kerr's App., 294 Pa. 246; Nectow v. Cambridge, 277 U. S. 183; Ward's App., 289 Pa. 458.

The result of the decision of the trial judge, in permitting the use of this triangular lot of ground for business and commercial uses, is that it will establish a triangular shaped business wedge in a strictly residential area: Zahn v. Board of Public Works, 274 U. S. 325; Euclid & Ambler Realty Co., 272 U. S. 365.

So long as the restriction imposed has a substantial bearing on the health, safety, morals, or general welfare of the public, the courts will not condemn it: Gilfillan's Petition, 291 Pa. 358; Kerr's App., 294 Pa. 246; Ward's App., 289 Pa. 458; Liggett's Petition, 291 Pa. 109; Junge's App., 89 Pa. Superior Ct. 543.

*Frank M. Hunter,* of *Hannum, Hunter, Hannum & Hodge,* for appellee.——The districting of petitioner's land in a residence district has no foundation in reason and is a mere arbitrary and irrational exercise of power, having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense: Nectow v. Cambridge, 277 U. S. 183.

The zoning restrictions imposed on appellee's land are unnecessary for the health, safety or welfare of the public; deprive appellee of his property without due process of law; and do not accord to him equal protection of law, and accordingly are unconstitutional and void: Lochner v. New York, 198 U. S. 45; Burns Baking Co. v. Bryan, 264 U. S. 504; Nectow v. Cambridge, 277 U. S. 183; White's App., 287 Pa. 259; Norwood v. Baker, 172 U. S. 269; Butters v. Oakland, 263 U. S. 162; Browning v. Hooper, 269 U. S. 396.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 17, 1930:

Plaintiff filed a petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, to deter-

mine the constitutional validity of a township zoning ordinance as applied to a certain piece of land owned by him. At the threshold of this case, the question arises as to the availability of such a remedy under the circumstances here presented. True, this point is not raised by any assignment of error, and is not included in the statement of questions involved printed by either side; but in most of the cases where a question of the availability of the Uniform Declaratory Judgments Act as a remedy has been ruled by us, the point was raised by the court itself and not by the litigants. See Dempsey's Est., 288 Pa. 458, 460; Leafgreen v. LaBar, 293 Pa. 263, 264; Lyman v. Lyman, 293 Pa. 490, 495-6; Ladner v. Siegel, 294 Pa. 368, 371-5; Pittsburgh's Consolidated City Charter, 297 Pa. 502, 506-8; see also List's Est., 283 Pa. 255, 257-8. We are determined that the Declaratory Judgments Act, an excellent piece of legislation when kept within proper bounds, shall not be used in cases to which it is not properly applicable. The limitations on the use of this remedy are fully discussed in Kariher's Petition (No. 1), 284 Pa. 455, where we said (page 471) that, "a proceeding to obtain such a judgment will not be entertained......where another statutory remedy has been specially provided for the character of case in hand......and......jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between......[the] parties...... and......the declaration sought will be a practical help in ending the controversy." See also List's Est., supra, 257; Dempsey's Est., supra, 460; Leafgreen v. LaBar, supra, 264; Pittsburgh's C. C. Charter, supra, 507. Here an actual controversy exists; but is there another "specially provided" statutory remedy available to plaintiff? If so, he cannot get relief through a declaratory judgment proceeding.

The Act of June 29, 1923, P. L. 957, "authorizing boroughs and townships of the first class to adopt and en-

force zoning ordinances regulating the location, construction, and use of buildings......and the use of land," provides (pages 959-61) for the creation of "a board of adjustment," and that an appeal may be taken to that body "by any person aggrieved,......or...... affected by any decision of [an] administrative officer," covering matters within the purview of the act; further, that persons aggrieved by the decisions of the board of adjustment may "within thirty days after the filing of [any] decision," appeal to the court of common pleas. This act also provides (page 959) that "the board of adjustment may, in appropriate cases,......make special exceptions," thereby taking a particular piece of land out of the restrictions to which it would otherwise be subjected.

The piece of land with which we are now concerned is a triangular lot of about .6919 acres, on the outer corner of a large 70-acre tract, originally owned by plaintiff, which, speaking generally, he laid out in lots to sell for residential purposes. He reserved this particular lot, and, as found by the court below, held it "for many years, for the purposes of selling or developing for store, apartment, theater, or other commercial or business uses." The court further found that the reserved land was "within, or in the immediate vicinity of, present business development." All of these facts will be more fully discussed later on. At this point it will suffice to say that defendant's zoning ordinance placed plaintiff's lot in an area restricted to residential purposes, within which the business uses just stated were forbidden; and the effect of this zoning is claimed to be confiscatory as to the particular piece of property here involved.

Reduction in values, shared by most, if not all, owners in a locality, because of the common effect on properties of the general scheme of a zoning ordinance, is not enough in itself to render the ordinance confiscatory: Ward's App., 289 Pa. 458, 462; Kerr's App., 294 Pa.

246, 249-50; Euclid Village v. Ambler Realty Co., 272 U. S. 365, 384, 386-8. One claiming to be injured by a zoning law has to show more, if he would have its application to his particular property declared unconstitutional. He is obliged to prove, inter alia, that some special regulation or part of the statute or ordinance under attack has peculiarly injured his property, and that he is an actual sufferer from such injury. As long as there is a possibility of the removal of the property in question from the alleged detrimental restrictions, its owner is not in a position to ask that the act or ordinance, giving rise to or containing such restrictions, be declared unconstitutional in any part or to any degree; in other words, until that possibility is eliminated, the owner has not suffered such an injury as to entitle him to this extraordinary relief. Therefore, the present plaintiff, in order to put himself in a position to ask that the zoning of his lot be adjudged void, had first to petition for the removal of the property from the residential zone in which, as he asserts, it was wrongfully located; for only after refusal of an application of this kind could he claim to be such an actual sufferer from defendant's ordinance as to entitle him to have its application to his land declared unconstitutional. Accordingly, plaintiff asked that his lot be transferred to what defendant's ordinance designates as an "H" district,—a semiresidential, semibusiness zone; the board refused his petition, and no appeal was taken. In making that application, plaintiff, for then present purposes, had to assume the constitutionality of defendant's zoning ordinance. He could not make his application under the ordinance and at the same time attack its validity; hence nothing which then took place would bar him from subsequently raising, in another and appropriate proceeding, the constitutional issue of confiscation now before us. An appeal from the decision of the board of adjustment would not have been appropriate to that end; for, had plaintiff, on such appeal, attempted to

raise the issue of the invalidity of defendant's ordinance, as confiscatory of his property, he would have been met by the proposition that he was attacking the validity of the very legislation under which, in the same proceeding, he had asked relief, and by the rule that such a course was not permitted. Hirsh v. Block, 267 Fed. 614, 618 (Court of Appeals of District of Columbia), contains a good statement of this rule,—that one who has invoked a specially provided statutory remedy cannot, on appeal from a decision against him, attack the constitutionality of the statute under which he had originally proceeded. There, a landlord, at the termination of a lease, began an ordinary action for possession. The defendant contested his right to so proceed, because he claimed that another appropriate statutory remedy had been specially provided for such cases. The landlord then asserted the unconstitutionality of the statute in question. In reply, defendant urged that his opponent should have proceeded under the specially provided remedy prescribed in the statute, and, "if unsuccessful, appeal[ed]," and, on that appeal, raised his constitutional point. To this the court said: "Plaintiff would be in a poor position to question the jurisdiction which he had himself invoked, merely because of an adverse decision; if he should invoke the aid of the statute, and suffer defeat before the commission, he would estop himself to seek further relief [in that proceeding] on the ground of the unconstitutionality of the act." The court, in Hirsh v. Block, cites a number of federal Supreme Court cases in support of its decision. In the case now before us, there is a further reason why an appeal from the decision of the board of adjustment was not the proper remedy for plaintiff. Had that course been pursued, the record appealed from would not have shown plaintiff's principal item of evidence on the issue of confiscation,—i. e., the loss of the negotiated-sale of his property for a price some five times higher than its value as zoned,—since this loss occurred after the de-

termination of plaintiff's application to the board of adjustment and, from all that appears, perhaps after the thirty days, allowed for an appeal from the decision of that body, had expired. We conclude that, under the circumstances at bar, plaintiff was not confined for relief to the zoning act.

The court below found that, while plaintiff's property is readily salable for business uses, yet, for residential purposes, it is worth only between $12,500 and $20,000; that plaintiff had been offered for it, since the date of the defendant's zoning ordinance, by a bona fide responsible purchaser, $90,000, provided the lot was "legally employable for erection thereon of a structure to be used for business purposes," and that this opportunity was lost to plaintiff by the refusal of the zoning authorities to relieve his land from the restrictions applicable to the district in which it was located. Thus, it may be seen, we have the case of land readily available for sale, with a large market value if it can be put to limited business uses, but, if restricted by defendant's zoning ordinance to residential purposes, then only salable at a reduction of about 75% of its value as a business property. This state of facts is largely the basis of plaintiff's allegation that the effect of defendant's ordinance, forbidding him to use his lot for other than residence purposes, is to confiscate his property, the character of which plaintiff asserts entitles it to be zoned for certain business uses; these claims defendant denies.

The Declaratory Judgments Act, by section 2, provides that "any person......whose rights......are affected by a statute [or] municipal ordinance......may have determined any question of construction or validity arising under the......statute [or] ordinance...... and obtain a declaration of rights, status, or other legal relations thereunder." Here, plaintiff's rights are affected by the zoning ordinance; there is an actual controversy between him and defendant township in that

regard, and, under the circumstances of this case, he is entitled to a declaratory judgment as to the status of his property, so far as the purposes for which the land may be lawfully employed are concerned.

The court below concluded that the land in controversy was "legally available" for "stores, offices, apartments, places of amusement, and all other lawful purposes," without regard to "the restrictions of the zoning ordinance," because the placing of this lot in a residential zone had "no foundation in reason," and presented "a mere arbitrary, irrational exercise of power, having no substantial relation to the public health, the public morals, the public safety, or the public welfare in its proper sense."

Appellant township has not assigned as error any of the underlying findings of fact on this record; therefore we must treat them as conclusively established: Keck v. Van Dyke, 292 Pa. 532, 535. This brings us to the question whether the facts as found warrant the conclusion reached by the court below.

The triangular lot with which we are here concerned is situated at the intersection of the Darby, West Chester and Lansdowne Roads, in that part of Haverford Township known as Llanerch; during plaintiff's ownership, it has always been undeveloped and vacant land. This lot fronts, on its westerly side, 311 feet along Darby Road, the main artery of travel for that locality and beyond, on which are laid the tracks of the Ardmore & Llanerch Street Railway. On an average weekday, almost 6,000 vehicles of all kinds and descriptions, "a great portion of which are commercial in their uses," pass along Darby Road in front of plaintiff's lot, including busses and the cars of the street railway line. Of the latter, the court below found that "214 large, double truck, heavy steel railway cars, weighing more than 26 tons apiece, having a seating capacity of 58 [passengers], and operating at rush hours in two-car trains......more than one car a minute," pass plain-

tiff's property; also that about 11,000 vehicles a day pass over the intersection of Darby Road and West Chester Road.

The eastern boundary of plaintiff's lot extends approximately 343 feet along the west side of Lansdowne Road, while the northern boundary abuts on Park Road for a distance of about 196 feet. As previously stated, plaintiff's land is part of a larger tract of 70 acres which he at one time owned and laid out in a plan of lots. These lots were sold without any general or uniform restriction, some being disposed of free of all·restrictions; certain of them were disposed of for neighborhood stores and other such business purposes. The greater part of the original 70-acre tract, lying to the north and east of the lot with which we are here particularly concerned, forms a residential district accessible by means of narrow, and in some cases, winding roads, typical of suburban residential sections. There is no main artery of traffic or highly developed business street cutting through any portion of this residential section, similar to Darby Road, on which the particular lot here in question faces.

The zoning ordinance under attack was put into effect in 1925, some 24 years after plaintiff bought and laid out the 70-acre tract; it forbids the use of his lot for any commercial or business purpose, confining it to strictly residential use, and, in effect, allows only three dwellings on the land, which compels the owner to leave 86% of its area entirely vacant. To show the unreasonableness of these restrictions as applied to plaintiff's lot, in view of the present character of use to which adjacent and near-by properties are put, the following additional facts found by the court below are noted: The land on the west side of Darby Road, immediately opposite plaintiff's lot, and north for four squares, is zoned and extensively used for commercial and other nonresidential purposes; it is "built up heavily with stores and other places of business,......a number of

them of considerable age," comprising "a candy store, plumbing and heating shop, apartments......, an old frame coal office,......an 'American' store, a drug store, an 'A. & P.' store, a hardware store, a fruit store, a tailor shop, a cigar store, and, directly across from petitioner's land, a large public garage with a frontage of 90 feet......; [while] across West Chester Road, but about 240 feet from petitioner's land......, is a barber shop, restaurant, tire shop,......apartments ......[etc.]." All the land in the township on the south side of West Chester Road, and the major portion of the land on the north side thereof, west of the Darby Road intersection, is zoned and used for business purposes.

Although the residential section before referred to, which lies to the north and east of plaintiff's lot, was sold, lot by lot, from plaintiff's original 70-acre tract, yet, as already said, no general restrictions were imposed, and the triangle we are here concerned with was retained, free of all restrictions, because plaintiff had a definite intention as to it. He has held this triangle many years, with the avowed purpose of selling or developing the land for stores, apartment, theater, or other commercial or business uses. To this end, some two years before the passage of the zoning ordinance here under attack, plaintiff constructed a paved roadway between his lot and the railway tracks on Darby Road, at a cost to himself of over $7,500.

The court below found plaintiff's land to be "in the immediate vicinity of the present business development ......[and] in the pathway of further progressive business and commercial development"; that, "by reason of size, shape, area and location, the property is especially adaptable for business and commercial uses" and is "unsuitable for residential purposes"; that this particular piece of land has a value of only $12,000 to $20,000 for residential use, while it has a value of between $90,000 and $100,000 for business and commercial purposes; further, that the erection of a theater build-

ing, apartment house, store or other such business and commercial buildings on this lot would not adversely affect property values in any portion of the district in which it is located, and would add to the value of some of the adjacent properties; that this sort of development would not unduly create a traffic congestion or hazard or increase the fire risk to near-by residences, nor would such uses of plaintiff's lot "create an adverse effect on the township at large or be incompatible with the public health, safety, morals, or welfare of the township at large or the district in which [the] land is located."

As a general rule, in zoning territory of the kind now before us, the lines should be fixed in such a way as to avoid making one side of a main artery of travel purely residential where the opposite side of the street is already so uniformly used for business purposes as to have established its character in that regard (see White's App., 287 Pa. 259, 268); for so to do will almost inevitably lead to such unreasonable destruction of values as to be confiscatory. In the case now before us, the court's underlying and unattacked findings of fact make it evident that plaintiff's lot is not characterized by the residential area to its north and east, but rather by the active business district which it faces. To zone this piece of ground,—lying, as it does, on one side of a main thoroughfare and chief artery of travel for the general locality and environs,—as purely residential, while the opposite side of the street is given over to business purposes, is clearly unreasonable, discriminatory and confiscatory, and the court below correctly so decided.

We may here repeat, as appropriate to this case, what was said by the federal Supreme Court in Nectow v. Cambridge, 277 U. S. 183, 188: "An inspection of a plat ......upon which the zoning districts are outlined, taken in connection with the......findings, shows with reasonable certainty that the including of the locus in question is not indispensable to [defendant's] general [zoning] plan." We may further say, as was also there

pointed out, that it is perfectly feasible "to exclude the locus from the residential district." In this case, that can be done by running a line along Lansdowne Road, —which cuts into Darby Road (the main artery of travel) at the southern point of plaintiff's lot and bounds his property on the east,—to such a turning point at or beyond the plaintiff's northwestern line as may seem best. While it is not the duty of the courts to fix the district lines or otherwise take the place of the zoning authorities, yet the latter are subject to have their work in that respect pro tanto set aside where, as here, its application to a particular property is found, on judicial review, to be unreasonable and confiscatory: White's App., 287 Pa. 259; Nectow v. Cambridge, supra.

The judgment is affirmed at cost of appellant.