## Townsend's Petition

*High, Dettra & Swartz*, for petitioner.

*Larzelere & Wright* and *Conlen, LaBrum & Beechwood*, contra.

KNIGHT, J., October 27, 1933.—This is an appeal from the decision of a board of adjustment, under the provisions of the Zoning Act of June 29, 1923, P. L. 957. The appellants are the owners of a piece of land containing approximately

3½ acres, located at the intersection of City Line and Merion Avenues, in Lower Merion Township.

On December 26, 1929, the appellants, acting through their architects, made application to the building inspector of said township for a permit to erect an apartment building, seven stories high, containing 50 apartments, on the above-mentioned piece of land. The application was refused, solely because the property on which the proposed building was to be erected was located in an "A" residence district, wherein an apartment house or multiple dwelling is not among the uses permitted by the Lower Merion Zoning Ordinance of 1927.

Appellants then presented their petition to the board of adjustment of Lower Merion Township, requesting the board to reverse the decision of the building inspector and direct him to approve the plans and specifications for the new structure, provided they should meet all the requirements of the building code of the township and all requirements of the zoning ordinance applying to class "C" residence districts, wherein apartment houses are permitted.

To this petition an answer was filed by 23 owners of property, constituting a large majority of those whose residences are in the area immediately adjacent to the land of the appellants. The board of adjustment, after several hearings, at which much evidence was taken, refused the prayer of the petition. This appeal followed, and at the hearing before the writer the evidence adduced before the board of adjustment was admitted, and no other testimony offered.

Zoning map no. 1 of Lower Merion Township shows that an area fronting on City Line Avenue, between Merion Avenue and Orchard Road, a distance of approximately 4,000 feet, and extending in depth about 5,600 feet, has been zoned as class "A" residential, which restricts its use to single residences. In this area are some of the most pretentious homes in suburban Philadelphia. Large and costly houses, with spacious grounds, attractively planted, proclaim it to be a residential district of the highest order. The appellants' land, on which is erected a large dwelling, is situated at the southwesterly corner of the district. The buildings are not in good repair and have not been occupied for several years. We will not attempt further description of the premises in question or the surrounding homes, as the maps and pictures offered in evidence portray them better than they could be sketched in words. The appellants contend that the zoning ordinance of Lower Merion Township is unconstitutional as applied to their property.

The legality of regulating the uses of real estate by zoning has become well established as a proper and constitutional exercise of the police power. The appellate courts of Pennsylvania do not seem to have passed upon the legality of a zoning ordinance prohibiting the erection of apartment houses in certain residential districts. Such ordinances, however, have been before the Supreme Court of the United States and have been upheld: Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365; Beery v. Houghton, 273 U. S. 671. In the absence of any expression from our own appellate courts on the subject, we will follow the decisions of the highest Federal court in holding that the provision of the Lower Merion zoning ordinance, prohibiting the erection of apartment houses in class "A" residential districts, is not unconstitutional.

The courts have held, however, that while a zoning ordinance may, in broad aspect, general scope, and dominant features be constitutional, it may be unconstitutional when applied to a particular property.

This, as we understand it, is the position of the appellants, who contend that although it may be that the township may legally zone against apartment houses in "A" residence districts, still, the ordinance, as it applies to their

property, is unreasonable, discriminatory, and confiscatory, and therefore unconstitutional and void.

It rests with the appellants to establish their contention. We cannot agree with counsel that the burden of proof is upon the township and the objectors. Such an argument would have greater force were this a hearing before the township commissioners or the zoning commission, when the zoning legislation was being considered.

The Lower Merion ordinance is now 6 years old; it was passed after careful study and public hearings. It is to be presumed that the commissioners complied with the provisions of the enabling Act of 1923 and that the ordinance was passed for the purpose of promoting the health, safety, morals, and general welfare of the people of the township. It is to be presumed that the ordinance is a proper and constitutional exercise of the powers conferred by the legislature to zone the township. To meet the burden of proof and sustain their case, appellants rely, among other less important things, upon three factors:

1. The location of their property, especially in relation to the rest of the district and in relation to the neighboring county of Philadelphia.

2. The character of the immediate neighborhood, which appellants arbitrarily but not unfairly fix as the area within a radius of 1,200 feet of the premises in question.

3. The difference in value of the land as presently zoned and its value if zoned in class "C".

In support of the first factor, appellants point to the fact that City Line Avenue is an arterial highway, over which there is a large volume of traffic, particularly on Saturday and Sunday. While there can be no doubt that thousands of passing motor vehicles do not add to the peace, quiet, and enjoyment of a residential neighborhood, still in the present case, where the houses sit well back from the highway and are in most cases surrounded by trees and shrubbery, the traffic on City Line has little effect on the character of the district. There are many fine residential neighborhoods situated on arterial highways in the environs of Philadelphia.

It is pointed out that the territory directly across City Line Avenue, in Philadelphia County, now occupied by fine residences, is not zoned and may in time be used for apartment houses and business. At the present time, however, it is residential, and we have been informed through the public prints and otherwise that the City of Philadelphia has, since the hearing in this case, passed a zoning ordinance, by the terms of which the land directly opposite the premises in question is zoned in a class corresponding to class "A" under the township ordinance.

Turning now to the immediate neighborhood, that is, the area within a radius of 1,200 feet of the appellants' land, we find on the Montgomery County side the following nonconforming uses of the land: A relatively small and attractive apartment house, a clean and well-kept gasoline service station, and the four-track main line of the Pennsylvania Railroad. The apartment house, the York Lynne, is situated on City Line, 1,200 feet east of appellants' property. It was built before the zoning ordinance was passed and is now operated as a nonconforming use. Its existence may depreciate to some extent the value of the surrounding homes, but it does not materially change the high class residential character of the district.

West of appellants' property, from Merion Avenue to Lancaster Road, for a depth of 200 feet, City Line is zoned as class "C". At the corner of Merion Avenue and City Line, directly across the former from the land in question, is the gasoline service station. The establishment is an intruder, for it is

the only business use, except the railroad, on City Line from Lancaster Road to Orchard Road, a distance of one mile. It came before the zoning ordinance, apparently as a compromise with the owner, who desired to erect a garage. A gasoline service station is undesirable in a high class residential neighborhood, but we agree with the board of adjustment that this one business property does not so materially change the character of the adjoining zoning district as to warrant a change in classification.

Much has been said about the selection of Merion Avenue as the boundary between the zoning districts "C" and "A". The line must be drawn somewhere, and the character of the improvements east of Merion Avenue suggest that thoroughfare as the reasonable and logical place to draw it. Little need be said of the railroad, 250 feet away; it was there years before Overbrook became a select and high class residential suburb. The comparatively recent electrification of the road eliminates some, if not the most serious, objections to it.

Across City Line Avenue, in Philadelphia County, within distances varying from 300 to 600 feet from the property in question, there are four or five apartment houses, differing in size, a private school, and the Overbrook Station of the Pennsylvania Railroad. The apartment houses, save one, do not front on City Line but face intersecting streets. These apartment houses, grouped around Overbrook Station, are beyond the control of the Lower Merion authorities. They influence the character of the neighborhood on the Montgomery County side, and if they fronted on City Line directly opposite the premises in question they might prove the dominating factor in this case. We are of the opinion, however, that their location is not such as to destroy appellants' land for single residence use.

A number of the protestants were heard, who voiced the usual objections to apartment houses in high class residential neighborhoods. Increased fire and traffic hazards, noise, unpleasant odors, diminished light and air, depreciation in value of surrounding residences, and other annoyances incident to the grouping of half a hundred families under a single roof. Some of these objections are of little weight in the present case, when the character of the proposed structure is considered. The increase of traffic on City Line will not be noticed, but the traffic on Merion Avenue and Balcyon Avenue will be considerably augmented. The fire hazard will be negligible, except the noise, confusion, and traffic risks incident to small fires which may start in individual apartments. Common experience and observation demonstrates, however, that many of the objections urged by the protestants to apartment houses in high class residential neighborhoods are real and substantial.

Some confusion arises when the testimony in reference to the difference in value of the land if zoned in class "C" and its value as zoned in class "A" is studied. The expert called by the appellants placed its value for apartment house use at $235,000 and its use as single residence sites at $83,500. The expert called by the board of adjustment agreed with the appellants' expert in placing a value of $235,000 for unrestricted apartment use, but valued it for single residence purpose at $87,500 and for restricted apartment house use at $112,000.

As the appellants declare that they do not wish to put up an unrestricted building, but would conform to any reasonable restrictions as to the height and size of the structure, it would seem that the difference in value is not great, according to the last expert. His evidence is all we have on the point, for appellants' witness gave no value for restricted apartment use.

In considering the element of difference in value, it might be well to note in passing that the value of the surrounding residences will be diminished by the advent of the proposed apartment house. Counsel for appellants argue that this is a private matter and must not be considered by the court. We cannot agree with them entirely, for it seems to us that depreciation in the value of a number of homes, because they are less desirable for residence use, is not without its relation to the general welfare of the community.

Assuming, however, that the depreciation in value of the surrounding homes is entirely a private matter, there are equities in this case which militate against the appellants. Most, if not all, of the protestants purchased the land on which their houses are built from the ancestors of the present beneficial owners of the property here in question. Severe restrictions were imposed upon the parcels sold, limiting their use to single dwellings. The value of appellants' remaining land was unquestionably increased for apartment house use, because of these very restrictions. The appellants are now in the position of asking to use their land for a purpose which their ancestors forbade to their vendees. If counsel are right in their legal contention, this feature may not enter into the question, but certain it is that this application for a variance comes with rather poor grace from the appellants in this case.

If zoning is to accomplish its purpose, the integrity of the zones must be maintained unless compelling reasons warrant a change. If the appellants are successful, then the owners of surrounding property, especially that fronting on City Line Avenue, can with equal or greater reason demand that the apartment ban be lifted from their lands. Thus the integrity and character of the district would be eventually destroyed.

In deciding this case, we have not cited many of the numerous authorities which we have examined, for, as we view it, each case rests upon its own facts and circumstances. Thus, the decision in Taylor v. Haverford Township, 299 Pa. 402, strongly relied upon by the appellants, must be considered in the light of the situation there before the court. We have considered the locus in quo of that case and find there is a material difference between the facts there and those in the instant proceeding.

The high standing of counsel engaged on both sides, the thoroughness with which the case was prepared and presented, the prominence of the appellants and protestants, and the character and ability of the members of the board of adjustment of Lower Merion Township, all mark this case as one of importance meriting the careful consideration of the court.

We have studied the record, read and read again the briefs of counsel, and have viewed twice the premises in question. We recognize that the arguments of the appellants are not without merit, but after mature deliberation we are of the opinion that the Lower Merion zoning ordinance is not unconstitutional as applied to the appellants' property, that the board of adjustment did not abuse its discretion in refusing to grant a variance, and that its decision should be sustained.

And now, October 27, 1933, for the reasons set forth above, as well for the reasons contained in the able opinion of the board of adjustment, the appeal is dismissed, at the costs of the appellants.