## Casper et al. v. Exley et al.

*Philip C. Pendleton* and *C. Brewster Rhoads,* for plaintiffs.

*G. Coe Farrier,* for defendants.

LEWIS, J., August 13, 1942.—This is an appeal by Milton Casper and the School District of Philadelphia from the action of Gordon R. Exley et al., members of the board of adjustment administering the zoning ordinance of the City of Philadelphia, in refusing a certificate of variance to permit the erection of a gasoline service station.

The site of the proposed filling station is at the intersection of the southwest side of Pike Street and the northwest side of Broad Street, being an irregular lot with a frontage of 228 feet ½ inch on the west side of Broad Street, about 108 feet 81½ inches in depth, irregular on the rear, and with a frontage of 170 feet 6⅝ inches on McFerran Street, and 12 feet 9¼ inches on Pike Street. The lot was formerly occupied by a public school building, but this use has been abandoned and the property has been sold at public auction by the School District of Philadelphia to Milton Casper for $26,000. Settlement has not yet been made, and hence the School District of Philadelphia retains the legal title.

The land in question is classified as D-1 residential. The evidence discloses that this classification was apparently determined arbitrarily because all school

properties throughout the city were classified as residential, irrespective of location and surroundings. This is the only lot on the west side of Broad Street for several city blocks in both directions that is not classified as commercial. On the opposite side of the street all lots are classified as commercial except one block designated as D-1 residential; half of this block is occupied by church property, and the remaining half, directly opposite the lot in question, is occupied by a few residences, with the remainder converted into tenements, rooming houses, and undertaking establishments. A map of the district evidences that over 75 percent of the surrounding neighborhood is classified as commercial and is mainly used for serving or selling to the automobile trade.

On October 10, 1940, after Casper had purchased the property, the City Council of the City of Philadelphia passed a resolution directing the board of adjustment to hold a public hearing to determine the advisability of changing the designation of the land from D-1 residential to A commercial. At this hearing, held November 12, 1940, no one appeared to protest the change, and the board of adjustment recommended to city council that an ordinance be adopted changing the designation to class A commercial. This ordinance was referred by city council to its committee on planning and zoning, where it has remained unacted upon.

On October 18, 1941, being unable to obtain action on the ordinance, petitioners applied to the Bureau of Engineering, Surveys and Zoning, Department of Public Works, of the City of Philadelphia, for a zoning and use permit for a gasoline service station.

This was denied them on the ground that a gasoline service station is a use not permitted in the district. On October 29, 1941, petitioners appealed to the board of adjustment for a certificate of variance to permit the erection of a gasoline service station, but on February 7, 1942, this board refused the application, assigning

as the reason that the zoning ordinance does not permit a gasoline service station in a D-1 residential district.

The facts are substantially agreed upon by all parties. The only question raised is on the conclusion of the board of adjustment that it is without power to grant a variance with respect to the use of the property. The Act of May 6, 1929, P. L. 1551, sec. 8, authorizing the adoption of zoning ordinances in cities of the first class, reads, inter alia, as follows:

"The board of adjustment shall have the following powers: . . .

"3. To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The city solicitor argues that the zoning ordinance of the City of Philadelphia approved August 10, 1933, Ordinances and City Solicitor's Opinions (1933) p. 268, does not grant this power to the board. If this is correct, then the ordinance fails to carry out the mandatory provisions of the enabling act. However, the contention of the city solicitor does not appear sound, since the ordinance itself provides in section 31, para. 7, p. 342, as follows:

"Appellate Jurisdiction. Appeals may be taken to and disposed of by the Board of Adjustment, as provided in the Zoning Act of 1929."

It is fundamental that a power must exist in some public body to adjust the application of zoning ordinances to the changing trends that determine the reasonable use of land. The constitutionality of all zoning acts and ordinances depends on the right of government as agent and trustee for the public to guard public health, safety, morals, and general welfare. When by reason of changes in the character of a community or neighborhood the restrictions of a zoning act or zoning

ordinance no longer are reasonably applicable, the ordinance becomes an unwarranted restraint upon the use of private property and hence unconstitutional. As we view the act and ordinance in question, the very purpose of the board of adjustment is so to act in adjusting the zoning to changed conditions as to prevent the act and ordinance from automatically becoming unreasonable and therefore unconstitutional. It is admitted that all school properties in the City of Philadelphia were originally designated as residential without regard to their surroundings. When the land in question ceased to be school property, the classification became purely arbitrary, and it was necessary for some zoning authority to act deliberately and judicially. This should have followed automatically.

In a case with many points of similarity, Standard Investments Corporation's Petition, 341 Pa. 129, the Supreme Court stated (pp. 131-132) as follows:

"As was said in *White's Appeal*, 287 Pa. 259, 266, referring to the validity of zoning ordinances: 'There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic consideration.' After hearing, during which additional testimony was taken, the court below concluded that 'the ordinance, in so far as it purports to deny to the appellant the right to erect a gasoline filling station on its property, is unreasonable and the action of the Board in refusing the permit is arbitrary, and without any substantial relation to the public health, safety, morals, or general welfare.' We are not satisfied that this conclusion was so manifestly erroneous as to require reversal.

"We agree that it is not the duty of the courts to fix the district lines or otherwise to take the place of the zoning authorities, but as was pointed out in *Taylor v. Haverford Twp.*, 299 Pa. 402, 415, such authorities are subject to have their work in that respect pro tanto set aside where, as here, its application to a particular property is properly found, on judicial review, to be unreasonable and confiscatory."

The appeal is sustained, and the decision of the board of adjustment is reversed.

Counsel will submit a form of order.