## Kanig's Appeal

*James G. Colleran,* for appellant.

*William J. Kearney,* for appellee.

HOBAN, J., February 15, 1946.—This is an appeal from a decision of the Board of Zoning Appeals of the Borough of Dunmore, Lackawanna County, taken under the provisions of the Act of June 29, 1923, P. L. 957, as amended by the Act of April 17, 1929, P. L. 529. It is noted that the issue here was raised by petition and rule to show cause rather than by the procedure of petition, allowance of appeal and return thereto as prescribed by section 7 of the Act of 1923, supra, but since the parties want the matter decided on the merits we shall do so.

At the hearing on the rule testimony was taken. The pertinent facts are as follows:

A. By stipulation of counsel these facts were agreed to:

"On March 24, 1942, the council of the Borough of Dunmore passed a zoning ordinance which was approved by the burgess on March 25, 1942; that said ordinance prohibits within the limits of the borough, among certain other industries, the erection or operation of slaughter houses; that sometime in the fall of 1944, Harry Kanig, complainant, acquired title to a property in the fourth ward of the Borough of Dunmore; that complainant, in violation of the aforesaid ordinance, began to break ground to erect some sort of building and was fined the sum of $10 for violation of the ordinance, which fine was paid. That shortly thereafter complainant made application to the superintendent of buildings for permission to erect and operate a slaughter house on the aforesaid property acquired by him; that said application was refused and appeal immediately taken to the Board of Zoning Appeals, which board upheld the superintendent's ruling and refused to grant the application for permit. That on September 15, 1944, complainant, Harry Kanig, made application to the superintendent of building inspection for permission to erect and operate a wool-washing establishment on the aforesaid property, which application was refused; that on the same day, September 15, 1944, complainant appealed to the Board of Zoning Appeals for permission to erect and operate a wool-washing establishment on the premises, which building was to cost approximately $4,000. That the Board of Zoning Appeals overruled the order of the superintendent and granted complainant the right to erect and operate a wool-washing establishment in conformity with his application. That complainant now believes that it is impractical and unprofitable for

him to operate said wool-washing establishment and now appeals from the order of the Board of Zoning Appeals, refusing permission to erect and operate a slaughter house."

B. From the evidence these additional facts are found by the hearing judge:

The building proposed to be used as an abattoir is located in a sparsely settled section of the Borough of Dunmore. The two nearest human habitations are located at a distance of 700 feet and 1,100 feet respectively from the abattoir, and the owners thereof have testified that they have no objection to the conduct of a slaughter house at the site, provided it is operated in accordance with approved sanitary practices. There are no public sewers available within a mile of the site, but appellant has constructed an adequate system of cesspools which will dispose of sewage from the plant in a sanitary and efficient manner. The building itself has been inspected and approved by representatives of the Pennsylvania State Department of Agriculture, which report it is constructed according to modern requirements for the operation of the business of slaughtering cattle.

The borough zoning ordinance and the zoning map in their division of the borough into zones for purposes of regulation have placed a line between B and E zones about 100 feet to the northeast of the site in question, but while the proposed abattoir is in an E zone, the general nature of that part of the B zone contiguous to the E zone is similar to that of the E zone itself, being sparsely settled and containing a considerable amount of unimproved or wild land. In the fourth ward of the Borough of Dunmore there are approximately but 50 homes and only 111 registered voters, yet the ward itself is one of the largest territorially in the borough.

C. At the request of counsel and with their consent the hearing judge made a visual inspection of the premises and noted his observations as follows:

"The Court: A visual inspection of the premises occupied by the proposed slaughter house indicates that the slaughter house proper sits at a point about 150 feet east of the extension of East Drinker Street in Dunmore, or Highway Route 611, with an entrance by lane approximately 200 feet long from the same highway. On the northerly side of the slaughter house there is a stock pen where animals for slaughter are unloaded and may be retained for periods of one day or more pending the slaughtering. To the rear or east of the premises and at an elevation considerably higher than both the slaughter house and the office building there is a strip of apparently wild land, consisting of rocky outcropping covered with scrub growth. From locations approximately 75 yards to the east and northeast of the premises there is no habitation or other structure visible for distances of well over a half mile. To the northwest and immediately on the other side of Route 611 there are a number of structures, consisting of dwelling houses, outbuildings and gasoline station, distant from the slaughter house approximately 700 feet; and further to the northwest is the transmitting station of Radio Station WGBI. Immediately to the north of the premises there is a spur of the hillside or elevated ground already referred to as east of the premises, the ground of which is of the same general character, rocky outcropping covered with scrub growth, and which generally shields the building from observation from any structures located generally along Route 611 to the north. On the southerly side of the premises the hill continues to rise to an elevation of possibly 200 or 300 feet higher than the premises in question, with lanes through the scrub growth leading to old mine workings, but with no habitation or other structure visible from the premises for a distance of 500 yards or more.

"To the west of Route 611 the ground pitches abruptly to the east to the ravine through which passes

the D. L. & W. Railroad and the Drinker turnpike. The closest houses along Route 611 to the south are distant approximately one mile or more.

"The water supply for the property and for the abattoir is derived from an artesian well which is underneath the entrance to the abattoir building, with pumps located in the building itself.

"On the downslope of the spur already referred to on the northerly side of the property there are two dwelling houses approximately 800 to 1,000 feet from the property; and a distance of 200 to 1,000 feet further on there are about a dozen dwelling houses generally scattered along Route 611."

From the stipulations, the oral and written evidence and the inspection of the premises by the court, the court concludes that the operation of a slaughter house in the buildings and at the site in controversy would in no way interfere with or jeopardize the health, safety, morals or general welfare of the Borough of Dunmore itself, nor of the nearest residents in the vicinity of the proposed abattoir. The situation would have been an apt case for the board of appeals to exercise its power to vary or modify the provisions of the zoning ordinance and still remain in harmony with its general purpose and intent. See section 41 of the ordinance.

But respondent takes the position that the provision of section 41 of the ordinance which absolutely prohibits the building and use of any building, inter alia, for slaughter houses, stock yards or abattoirs is binding upon the board of adjustment and is a lawful exercise of the police power.

So far as we are able to determine, the validity of the sections of zoning ordinances prohibiting a certain type of use any place within a zoned area have not been passed upon. We have examined all of the statutes providing for authority of all classes of munici-

palities within the Commonwealth to prescribe a method of zoning. Each type of municipality, from first class city to second class township, is authorized by special laws to set up zoning ordinances and appropriate regulations thereunder. All counties are also by a separate zoning law authorized to pass zoning ordinances and set up similar systems. All of the laws contain generally the same type of provision in the clauses which prescribe the powers of municipalities to zone, but in not one of the grants of power clauses in any one of the acts is there a statement that any use may be completely prohibited within the general limits of any municipality. While the division into zones and districts and the regulation of uses in each of these districts has been generally upheld as a proper exercise of police power, it is obvious that a complete prohibition of a legitimate industrial use is a questionable exercise of the police power.

To put the case to its extreme possible application, suppose that all of the zoning authorities throughout the Commonwealth would pass similar ordinances and prohibit establishment of slaughter houses within their respective areas. The result would be that at no place in the Commonwealth could a local slaughter house be established as a new business venture and that a monopoly of the business would be granted to those established therein prior to the passage of such ordinances. It seems obvious that local slaughtering is a desirable and necessary business, to be conducted of course with appropriate safeguards for the health and comfort of the governmental subdivisions in which the business is conducted. It is likewise obvious that the idea of fixing the status of preëxisting business as an effectual monopoly is abhorrent, and we cannot conceive that such was the intention of the legislature in granting powers to municipalities to regulate the development and growth of their communities.

The principles which have been established by our appellate courts are well expressed in the following citations:

"Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained as a legitimate exercise of police power." White's Appeal, 287 Pa. 259, 268.

"While it is not the duty of the courts to fix the district lines or otherwise take the place of the zoning authorities, yet the latter are subject to have their work in that respect pro tanto set aside where, as here, its application to a particular property is found, on judicial review, to be unreasonable and confiscatory: . . ." Taylor v. Haverford Twp., 299 Pa. 402, 415.

Applying these principles to the case at bar, we are of the opinion that considering the facts as set forth above and the principles stated in White's Appeal and Taylor v. Haverford Township, supra, the zoning ordinance of the Borough of Dunmore and the action of the board of appeals in refusing to grant a permit to appellant for the operation of a slaughter house on the premises in controversy, as applied to this particular property, is unreasonable and confiscatory. Therefore, the appeal must be sustained and the action of the Board of Zoning Appeals reversed. While, as stated above, we may question the validity of a provision of an ordinance which in view of the circumstances of the borough contains an absolute prohibition of an otherwise legitimate industrial use, it is unnecessary to decide that such provision of the ordinance in toto is invalid. We rest our decision on the sole ground that as applied to this property it is unreasonable and confiscatory and, therefore, invalid.

Now, February 15, 1946, the appeal of Harry Kanig is sustained, the action of the Board of Zoning Appeals of the Borough of Dunmore in refusing appellant a certificate to operate a slaughter house in the premises situate at 1515 East Drinker Street, in the fourth ward of the Borough of Dunmore, is reversed and the record of the Board of Zoning Appeals is remitted to the board, with directions to issue a certificate of use in conformity with the decision set forth herein.