A. J. Aberman, Inc., Appellant, *v*. New Kensington.

Argued April 2, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

reargument refused June 19, 1954.

*Fred B. Trescher,* with him *D. J. Snyder, Jr.* and *Kunkle & Trescher,* for appellant.

*Milton W. Lamproplos,* with him *Anthony J. Bonadia, R. E. Best, Smith, Best & Horn* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellees.

OPINION BY MR. JUSTICE JONES, June 1, 1954:

This appeal arises out of an action in mandamus to compel the issuance of a building permit for the construction of a shopping center. Preliminary objections by the defendant municipality and its city clerk were dismissed; and the writ was issued peremptorily. Subsequently, the defendants petitioned to have the judgment opened and be let into a defense whereon a rule to show cause was granted. After answer and argument, the rule was made absolute; the preliminary objections formerly dismissed were reconsidered and sustained; and the writ of mandamus was refused. From that order, the plaintiff has appealed.

The basic question raised by the appellant corporation is whether it is entitled to a building permit for the construction of a shopping center in an area which, when the application for the permit was filed, was in the process of being zoned so as to exclude such a use of the land. The facts need be recited with considerable detail.

New Kensington is a Third Class City situated in Westmoreland County. On May 6, 1947, city council

522

enacted an ordinance (No. 176) which prohibited the construction or alteration of any building within the City without a permit so to do. Such permit was obtainable as a matter of course from the city clerk upon the payment of a fee of two dollars. Some time prior to March, 1953, city council, in accordance with Section 41 (b) of The Third Class City Code of 1951, P. L. 662, 53 PS §12198-4110 et seq., appointed a commission to prepare a zoning ordinance for the City. When the commission had completed its preliminary report, notice was given that public hearings thereon would be held on March 19th and April 2nd, 1953. Meanwhile, on March 9, 1953, Ordinance No. 261 was introduced in city council and was finally enacted on March 17th. It is this ordinance (No. 261) with which much of the present controversy is concerned. According to its title, the ordinance provided "for the Issuance of a Building Permit for the Alteration and Improvement of a Building in Existence and for the Erection and Construction of Buildings: . . . for the Type and Use of Said Buildings and the Locations Permissible Therefor: and . . . for a Fee for Said Building Permit, in the City of New Kensington . . . ." The ordinance declared that construction or alteration of any building within the City without a permit was unlawful; that applications for building permits should be in writing and accompanied by a complete set of the plans and specifications for the proposed construction or alteration; that applications for permits must be approved by a majority vote of the *city council* provided the application conformed to "the regulations, locations, and purposes and uses" set forth in the ordinance, which regulations, by reference to a "Building Map", divided the City into four districts,[1] the building regulations in each district

[1] The districts were: Residence 1, Residence 2, Commercial, and Manufacturing.

trict being substantially the same imposed by a later enacted zoning ordinance to which further reference will hereinafter be made; that a building permit would be issued *by the city clerk* (upon payment of two dollars) *if city council approved the application* therefor; and expressly repealed Ordinance No. 176 enacted May 6, 1947.

On April 28, 1953, the zoning commission made its final report and submitted to city council a proposed zoning ordinance. A public hearing was scheduled for May 5th. On the same day that the zoning commission presented its final report to city council (viz., April 28th), the plaintiff, A. J. Aberman, Inc., a Pennsylvania corporation, *applied to the city clerk* for a building permit for the construction of a shopping center on a tract of land owned or controlled by it.[2] The city clerk advised the plaintiff that its application should, under the provisions of Ordinance No. 261, be submitted to city council where it could be acted upon at its next scheduled meeting on May 5th. The plaintiff, disregarding the advice of the city clerk and ignoring the provisions of Ordinance No. 261, chose instead to institute the mandamus proceeding against the City and the city clerk which is involved in this appeal.

The plaintiff's complaint in mandamus was filed on May 4, 1953, just one day before the scheduled meeting of city council and the public hearing on the final report and recommendations of the zoning commission. City council met in regular session on May 5th, and hearings were conducted on the proposed zoning ordi-

---

[2] The plaintiff corporation actually owned but one-half of the premises here in question. The other one-half interest was held by three individuals who had, by power of attorney, vested the plaintiff with authority to treat their property interest as its own. Nothing was made to turn on this fact below, and no point of it is made here by the City.

nance. On May 27th, the defendant city and city clerk filed preliminary objections to the complaint in mandamus, contending, inter alia, that city council had not been given an opportunity to exercise, with respect to the permit application, the discretion vested in it by Ordinance No. 261. Argument on the petition for mandamus and preliminary objections thereto was listed for June 8th, but, on that day, "No hearing was had, the matter just being informally discussed before the Court *en banc.*" On the same day, the court dismissed the preliminary objections and, without opportunity for answer or hearing, issued the writ sought. The plaintiff, upon receiving the permit the succeeding day (June 9th), *at once* began construction of its shopping center. June 9th was also the very day that the final zoning ordinance was formally introduced in city council. Ten days later (viz., on June 19th), the defendants petitioned to open the judgment in mandamus, asserting that no opportunity had been accorded them to defend on the merits. The rule to show cause already mentioned was granted on the petition which the plaintiff answered on July 3rd. The order granting the rule also provided that all proceedings should be stayed in the meantime. On July 8th, the zoning ordinance was finally enacted and became effective ten days later (July 18th).

A hearing on the petition to open the judgment in mandamus was scheduled for September 21, 1953, but, at that time, a continuance was granted and the stay of proceedings was extended, "such stay to include but not be limited to any change in the status of the parties to the proceeding, or the premises or property more particularly described in the plaintiff's Petition for Writ." In October, 1953, a supplement to the petition to open (alleging that the plaintiff had not exhausted its administrative remedies) was allowed, and

answer thereto was filed. Finally, on February 2, 1954, the court made absolute the rule to open, reconsidered and sustained the preliminary objections and denied the writ of mandamus. In its opinion accompanying the order, the court below stated.—"We are now of the opinion that [Ordinance No. 261, enacted March 17, 1953] requiring the issuance of a building permit by the City Council was valid and that the application of the plaintiff for the writ of mandamus was premature. The summary judgment awarding the writ of mandamus was inadvertently granted and must be set aside."

The appellant contends that Ordinance No. 261 (the building permit ordinance enacted March 17, 1953) is a nullity, being allegedly a zoning ordinance not enacted in accordance with Section 41 (b) of The Third Class City Code of 1951, P. L. 662, 53 PS §12198-4110 et seq.; that it did not, therefore, repeal Ordinance No. 176 (the building permit ordinance of 1947); that the plaintiff's application for a building permit was properly made to the city clerk under the provisions of Ordinance No. 176; and that the appellant acquired a vested right in the permit issued to it on June 9th when, in reliance thereon, it began construction of its shopping center.

The municipality does not claim that Ordinance No. 261 was enacted in accordance with the requirements of The Third Class City Code relating to zoning. Nor does it dispute that a zoning ordinance must be enacted in strict conformity with the requirements of the relevant enabling legislation: *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182. What the municipality does assert is that Ordinance No. 261 was not a zoning ordinance. If that be so, it is immaterial that the ordinance did not conform to the requirements of The Third Class City Code relating to zoning legislation.

Ordinance No. 261 reposed in city council discretionary power to refuse the issuance of a building permit when an application therefor conflicted with certain regulations contained in that ordinance even though such regulations were substantially the same as were contained in the then pending and later enacted zoning ordinance. It is the appellant's contention that, in enacting Ordinance No. 261, city council attempted to enact a "stopgap" or "interim" zoning ordinance such as was struck down in *Kline v. Harrisburg,* supra. On the other hand, the municipality contends that, in enacting Ordinance No. 261, city council (following decisions of this court to the effect that a property owner has *no absolute or vested right* to obtain a building permit for a land use in harmony with existing legislation but in conflict with a pending and later enacted zoning ordinance) was merely announcing its intention to refuse any building permit which conflicted with the proposed final zoning ordinance. The contention is well founded.

In *Gold v. Building Committee of Warren Borough,* 334, Pa. 10, 5 A. 2d 367, an application was made for a permit to construct a gasoline station on a lot which, on the date of application, was zoned to permit such use. The application was refused, however, since there was then pending in borough council an ordinance which would prohibit the use. On the day the applicant sought a writ of mandamus to compel issuance of the permit, the zoning ordinance was finally enacted and became effective the following day. The writ was refused although the ordinance was passed during the pendency of the permit application. In sustaining the lower court, we reaffirmed the principle that mandamus is a discretionary writ, not a writ of right, and held that the court was not guilty of error in refusing the writ in the circumstances. Likewise, in *A. N. "Ab"*

*Young Zoning Case,* 360 Pa. 429, 61 A. 2d 839, an applicant sought a permit for a use consonant with the existing zoning ordinance but inhibited by an amendatory ordinance then pending before council. The permit was refused. Speaking for a unanimous court, Mr. Justice Stearne characterized the question involved as "whether a property owner has the right to obtain a permit for the erection of a building where the location of the building on the lot complies with *existing* law but conflicts with the terms of a *proposed* (but later enacted) zoning ordinance." In rejecting the contention that application for a building permit prior to the effective date of the amendatory ordinance conferred a vested right to secure the permit, we held that "a mere application for a permit confers no *vested right* as of that time, and an application may be refused or permit vacated because of an ordinance passed after the date of the application [citing cases] unless the holder of a permit previously issued does something of a substantial character toward construction, in good faith, before the enactment of the new zoning ordinance [citing cases]." Again, in *Mutual Supply Company Appeal,* 366 Pa. 424, 77 A. 2d 612, we declared,—"It is true, as the appellants assert, that the area in which [the] property is located was reclassified for single-family-dwelling use while the application for the permit was pending. But, that affords the appellants no ground for complaint. The Board disposed of the application according to the law in effect at the time of its action with respect thereto; and that is sufficient."

In view of the foregoing decisions, it will hardly be denied that a municipality may properly refuse a building permit for a land use repugnant to a pending and later enacted zoning ordinance even though application for the permit is made when the intended use con-

forms to existing regulations, provided, of course, that no permit has been issued and relied on, *in good faith,* to the substantial detriment of the holder of the permit. On the very day the appellant applied for its building permit, the zoning commission, which had been officially and publicly created several months earlier, submitted its final report, after hearings, to city council where a still further hearing on the proposed zoning ordinance was scheduled for seven days later. The complaint in mandamus was filed on May 4, 1953, but was not disposed of until June 8th following. Throughout that period the zoning ordinance was pending in city council and two public hearings thereon were held. It is true that the zoning ordinance was not formally introduced in council until June 9th, but it was, nonetheless, finally enacted on July 8th and became effective on July 18th. When the mandamus proceeding was *finally* disposed of by the court below on February 2, 1954, the ordinance had long since been in full force and effect: see *Mutual Supply Company Appeal,* supra. In the instant case, the City's refusal of the appellant's application for a building permit could have been sustained on the ground of the pendency of the comprehensive zoning ordinance then before council and whose ultimate enactment was virtually but a matter of days. This is so without reliance upon Ordinance No. 261. The voiding of the building permit, which the learned court below had inadvertently caused to be issued, can likewise be justified without regard for Ordinance No. 261 which, in the circumstances, had become superfluous.

Nothing that was said in *Kline v. Harrisburg,* supra, militates against these conclusions. It is enough to say that, in that case, the planning commission had neither completed its report nor submitted its recommendations to council and, consequently, no zoning

ordinance was pending. Here, however, the zoning commission had submitted its final report and recommendations to city council on the very day that the appellant first saw fit to make application for a permit. And, while in the *Gold, "Ab" Young* and *Mutual* cases, supra, the ordinances had been introduced in council when the permits were sought, in the present instance the zoning ordinance was so far advanced in the process of enactment as to come within the rule announced in those cases.

It is abundantly clear from the undisputed facts that the expenditures which the plaintiff company claims to have made following its receipt of the building permit on June 9th, as a result of its mandamus proceeding, were not made in bona fide reliance upon the permit but were made with inordinate haste and regardless of the circumstances in an effort to create an equity in the plaintiff's favor. It will be recalled that it was on the very day (April 28, 1953) that the zoning commission filed its final report, after several months' study and hearings, and submitted to council a proposed zoning ordinance that the plaintiff first applied for a building permit; and, when the permit was formally refused by the city clerk with the suggestion that the application be renewed before city council, which would meet in regular session on May 5th, the plaintiff deliberately ignored the advice and on May 4th instituted its proceeding in mandamus to compel the issuance to it of a building permit which the City resisted.

It requires no extended discussion to demonstrate that the plaintiff knew full well on June 9th, when the permit was issued as a result of the court's order, that the City was unalterably opposed to the issuance of the permit for the construction of a building that would directly violate the zoning ordinance then

drafted and before council for passage. Yet, without awaiting further effort of the City, by appeal or otherwise, to obtain relief from the judgment in the mandamus proceeding, the plaintiff claims to have made large expenditures and to have incurred obligations on June 10th, the day succeeding the issuance of the permit. Within ten days (i.e., on June 19th), the City obtained from the court a rule on the plaintiff to show cause why the judgment in mandamus should not be opened and the City let into a defense,—an opportunity which had never been accorded it. Moreover, the court's order granting the rule expressly provided that all proceedings should be stayed pending disposition of the rule. But, the plaintiff, notwithstanding, went ahead after that and made, according to its allegations, the largest part of the expenditures which it asserts entitles it to a vested right in the assailed building permit. The status of the permit was patently such that the plaintiff knew or should have known that, in the circumstances obtaining, it could not be relied upon as conferring a vested right to build pursuant thereto. Cf. *Dunlap Appeal,* 370 Pa. 31, 87 A. 2d 299.

Finally, the appellant argues that the court below lacked power to open the judgment in mandamus, such action having been taken in a term of court beyond the term in which the judgment had been entered. The contention is without merit. The judgment awarding the writ of mandamus was entered on June 8th during the May Term of court, while the petition to open was filed on June 19th which, incidentally, was also in the May Term,—a fact, however, without present significance or importance.

The petition to open was filed under Rule 1098 of the Pennsylvania Rules of Civil Procedure which, in material part, provides as follows: "Summary Judgment. At any time after the filing of the complaint

[in mandamus], the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown." As the Procedural Rules Committee noted with respect to Rule 1098, upon submitting its proposed Rules Governing Action of Mandamus, for official adoption and promulgation, "The practice of opening the judgment supersedes the present practice of moving to quash the peremptory writ. [Citing] Act of June 8, 1893, P. L. 345, Sec. 28, 12 PS 1974": 354 Pa. lxvi. Rule 1098 contains no limitation on the time within which a petition to open a judgment in mandamus may be filed. As stated in 3 Anderson, Pennsylvania Civil Practice, p. 337, in the Comment on Rule 1098,—"While no time limit is set, the court would act within the proper sphere of its discretion in refusing to open a judgment against a defendant who, after receiving notice of its entry or proposed entry, delayed an unreasonable time before making any objection thereto." Here, the defendant moved within ten days of the entry of the judgment to have it opened and be let into a defense. In such circumstances it cannot be said that the defendant was dilatory. Any delay in disposing of the rule granted on the petition to open the judgment was the responsibility of the court and not of the defendant whose rights could not be prejudiced thereby.

*Pennsylvania Stave Company's Appeal,* 225 Pa. 178, 73 A. 1107, which the appellant cites, is not presently germane. That was a case of opening a judgment at law after the expiration of the term and not a motion to quash a writ of mandamus by way of a petition to open. The court specifically recognized in the *Stave* case that judgments pro confesso or by default remain within the court's power regardless of the term time. Here, the judgment awarding the writ was tantamount to a judgment by default, having been entered on no

more than the plaintiff's complaint. Furthermore, the opinion in the *Stave* case, after noting that there was nothing in that case calling for equitable interference, declared,—"If there had been the ending of the term would not necessarily preclude relief." Actually, the *Stave* case is authority for no more than that the fact there relied on for opening the judgment (viz., ignorance of law) presented no equitable basis for avoiding operation of the normal rule as to the opening of a judgment beyond the term of its entry. Even if such rule were unbending and were applicable in respect of peremptory judgments in mandamus (where a petition to open is the equivalent of the former motion to quash), the fact that the writ had been "inadvertently granted", as the court below expressly conceded, was sufficient justification for opening the judgment, i.e., for quashing the writ.

The order is affirmed at the appellant's costs.