## Hertrick Appeal.

Argued October 8, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*T. Robert Brennan,* with him *Edward A. Damrau* and *Brennan, Brennan, Damrau & Mohan,* for appellant.

*William H. Eckert,* with him *John H. Morgan* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 6, 1958:

On December 21, 1953, the Borough of Green Tree enacted Ordinance No. 419 which added the following provision to the borough zoning regulations: "Section 14: In Local Business District a Gasoline Service Station may be established, erected or enlarged provided there is filed with the application for a permit the written consent of the owners in interest and number, of a majority of all of the property[1] within one hundred (100) feet of the proposed structure and not separated therefrom by more than one street forty

---

[1] This provision becomes intelligible when interpreted as if written "A majority of the owners in interest and number, of all of the property. . . ."

feet or more in width. In computing the percentage of consents required under this provision so much property as is already used for Gasoline Service Stations shall be counted as consenting. The property owned by the applicant shall not be counted in determining the consents required."

In 1955 the Standard Oil Company (referred to as Esso) obtained an option to purchase a property in Green Tree Borough belonging to one Amelia Ramsey. Esso exercised the option on a portion of the Ramsey property in February 1956, took title on May 31, and on June 1 of that year filed with the borough's secretary an application for a building permit. Attached to the application were the written consents of three adjacent property owners, Meehan, Ramsey and Mc-Clay, to the erection of a service station by Esso. Only their three properties were within one hundred feet of the main building which Esso proposed to erect. Subsequently, McClay revoked his consent. The building inspector and chairman of the borough zoning committee refused the application, and Esso appealed to the board of adjustment. The board held that since Esso had complied with all of the provisions of the borough's zoning ordinance, it was entitled to a building permit. From this decision the borough appealed to the county court contending that the consent of the owners in interest and number of a majority of all property within one hundred feet of the proposed structure was lacking. The applicant, Esso, upon petition to intervene was duly joined as a party respondent in the proceeding.

While the appeal was pending in the county court, the borough on November 28, 1956, by Ordinance No. 497, amended the zoning ordinance of 1953 to require an application for a building permit to be accompanied by the written consent of the owners of *"eighty (80%)*

per cent of all the property within *one hundred ten* (110) feet of the *deed line* of the property in question." (Emphasis supplied).

The court nevertheless proceeded under the 1953 ordinance, and concluded that the board of adjustment had properly granted the permit. From the order of the county court directing the building inspector to issue the building permit to Esso, Theodore Hertrick, Secretary of the Borough of Green Tree, and W. J. Dunbar, Building Inspector of the Borough, have taken this joint appeal.

The issues before us are whether errors of law have been made in the construction of the ordinance of 1953 and in the refusal of the court below to apply the ordinance of 1956 to the present proceedings. See *Archbishop O'Hara's Appeal,* 389 Pa. 35, 51, 131 A. 2d 587 (1957).

The first question raised by the appellants is whether the written consents filed by Esso in support of its application for a permit to construct a gasoline service station meet the requirements of the 1953 zoning ordinance with regard to number and interest of the adjoining land owners.

This ordinance provides that a *"Gas Service Station* may be established . . . with . . . the . . . consent of the owners in interest and number, of a majority of all of the property within one hundred (100) feet of the *proposed structure."* (Emphasis supplied).

The appellants contend that "the proposed structure" as used in this section refers to the whole, integrated service station installation including signs, light standards, pumps, gasoline tanks and other facilities. Since there are seven properties within a hundred feet of the perimeter of the area of the installation, under the appellants' theory Esso did not obtain the consent of the requisite number of property owners.

The zoning ordinance itself defines "structure" as "[a]nything constructed or erected, the use of which demands a permanent location on the soil. . . ." Granting that tanks, pumps and other facilities might all be "structures" as that term is defined in the zoning ordinance, the question remains what did the borough council intend by its use of the phrase "the proposed structure" in section 14 of the ordinance?

A reading of this section indicates that the phrase "the proposed structure" refers to the "gasoline service station." A gasoline service station is, in common usage, a *building* from which gasoline and auto supplies are sold. Appellants' position that the word "structure" was used in section 14 to denote the entire service station installation, which is itself composed of separate "structures", is justified neither by the definition of the word given in the ordinance itself nor by common usage. We are of the opinion that the council having used the singular—*"the proposed structure"*—intended to refer to and contemplated only the *proposed main building* and consequently, it is from this "structure" that the hundred feet measurement must be made in order to determine the property owners from whom consent is required. On this basis, only Meehan, McClay and Ramsey are the property owners whose consents to the Esso application would be required by the ordinance of 1953.

No question is raised as to the validity of the Meehan consent. However, the appellants seek the disqualification of the consent given by Mrs. Ramsey for the reason that she was the record owner of the tract of land from which the applicant's property was obtained. This circumstance is patently irrelevant to our consideration. Mrs. Ramsey is the owner of property situated within a hundred feet of the proposed main building of Esso. She is not the applicant for a

permit to construct a gasoline service station. Hence, her consent is valid under the ordinance, and thus must be included in determining whether the applicant, Esso, has complied with the ordinance.

Because the consents of owners Ramsey and Meehan are valid, Esso has obtained the required written consents from the majority of the owners both in interest and in number of the relevant adjacent property, and would therefore be entitled to the issuance of a building permit. Consequently, we are not required to determine the effect of McClay's withdrawal of his consent after the filing of Esso's application.

The second contention of the appellants requires us to determine the relevancy to the present proceedings of the 1956 ordinance requiring consent of the owners of *eighty percent* of property within one hundred *ten* feet of the *deed line* of the land upon which the service station is to be built.

We have held that a building permit may be refused if at the time of application there is pending an amendment to a zoning ordinance which would prohibit the use of the land for which the permit is sought. *Shender v. Zoning Board of Adjustment,* 388 Pa. 265, 131 A. 2d 90 (1957) ; *A. J. Aberman, Inc. v. New Kensington,* 377 Pa. 520, 105 A. 2d 586 (1954) ; *Gold v. Building Committee of Warren Borough,* 334 Pa. 10, 5 A. 2d 367 (1939) ; But cf. *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182 (1949). Even when an applicant is issued a permit, unless he proceeds in good faith to incur substantial obligations in reliance thereon, the permit may be vacated or revoked because of subsequently adopted amendments to the zoning ordinance which prohibit the proposed use of the land. *A. N. "Ab" Young Co. Zoning Case,* 360 Pa. 429, 61 A. 2d 839 (1948) ; *Herskovits v. Irwin,* 299 Pa. 155, 149 Atl. 195 (1930). The rule established by these cases was

designed to prevent the creation of what would become a non-conforming use after the effective date of a pending zoning ordinance. However, no such policy is involved in the case before us.

The 1956 amendment to the Green Tree zoning ordinance does not affect or change the *use* to which land may be put. Instead, it introduces a change in the *procedure* necessary to obtain a building permit by increasing the number of consents required from land owners in the area. Thus the amendment was not an effort to improve the community by upgrading land use, but rather an enactment which increased the power and domination of neighboring land owners over a particular piece of land.[2] An application for a building permit should not be affected by an amendatory ordinance enacted after the application was filed when the ordinance does not upgrade land use. We conclude that Esso's application for a permit was properly considered under the law in effect at the time its application was filed.

Order affirmed.

Mr. Justice BENJAMIN R. JONES concurs in the result.

---

[2] Zoning ordinances requiring the consent of neighboring property owners for specified uses of property raise serious constitutional questions. See *Perrin's Appeal*, 305 Pa. 42, 156 Atl. 305 (1931) (Zoning ordinance prohibiting the use of property for gasoline station, unless written consents obtained from owners in interest and number of a majority of all property fronting on the same block within 80 feet of site, held not to violate Fourteenth Amendment because non-consenting owner could seek equitable relief to enjoin a threatened nuisance). But see Annotation, 21 A.L.R. 2nd 551 (1952). However, the constitutionality of the Green Tree ordinance was not challenged by counsel, and since we hold that the appellant is entitled to the permit sought, a determination of the validity of the present ordinance is unnecessary to our disposition of this case.

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur in the affirmance of the order, but for an entirely different reason. Every owner of property in Pennsylvania is still entitled to certain inherent and indefeasible rights—among them the right to acquire, possess and protect property—which are ordained in and guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, §1, §10, and Article XVI, §8 of the Constitution of Pennsylvania.

In *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587, the Court said (page 57-58) : "In Lord Appeal, 368 Pa. 121, 130, 81 A. 2d 533, quoting from the leading case of White's Appeal, 287 Pa. 259, 134 A. 409, it was said: '. . . There is one matter that is quite certain, the power to thus regulate [*when clearly necessary to* preserve the health, safety or morals of the people] does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare . . . While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. . . . "The right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty, —an expression of his freedom,—guaranteed as inviolate by every American bill of rights": Spann v. Dallas, 111 Tex. 350, 235 S.W. 513.' "

The right to acquire and own and use real property was part of a man's fundamental liberty—an unalienable right established several centuries before the

Constitution of the United States or the Constitution of Pennsylvania was adopted. Every citizen of Pennsylvania possesses these unalienable and constitutional rights of liberty and property, and he cannot be deprived of them by the Federal or State or local Governments, or by Legislatures, or by Courts, but only by the People. These unalienable rights "include a right to use his own home [and property] in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are *necessary* for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property: White's Appeal, 287 Pa. 259, 134 A. 409; Taylor v. Moore, 303 Pa. 469, 154 A. 799; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182; Jennings' Appeal, 330 Pa. 154, 198 A. 621; Ward's Appeal, 289 Pa. 458, 137 A. 630; Bryan v. City of Chester, 212 Pa. 259, 61 A. 894; Taylor v. Haverford Township, 299 Pa. 402, 149 A. 639; Perrin's Appeal, 305 Pa. 42, 48, 156 A. 305; Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114; Penna. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158; St. Louis Poster Advertising Co. v. St. Louis, 249 U.S. 269, 39 S. Ct. 274; Eubank v. Richmond, 226 U.S. 137, 33 S. Ct. 76.": *Lord Appeal,* 368 Pa. 121, 125-126, 81 A. 2d 533.

These rights and principles have been reaffirmed and reiterated in recent decisions of this Court: *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97; *Medinger·Appeal,*

377 Pa. 217, 104 A. 2d 118; *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 523.

An ordinance which does not determine but authorizes a number of neighbors to determine whether or not a gas station or other structure can be erected by an owner of land on his own property has no clear and necessary relationship to the preservation of public health, safety or morals, and is on its face and by its terms an unlawful delegation of legislative power or of police power. Such a delegation of power is clearly and obviously unconstitutional!

In *Perrin's Appeal,* 305 Pa., supra, the Court said (page 49): "When zoning ordinances are sustained, it is on the theory that the police power of the State has been properly exercised by the municipal authorities to which it was delegated. Police power cannot be exercised by any group or body of individuals who do not possess legislative power; a municipality, through a council, may and usually does possess legislative power within the authority conferred. *Administrative officers or a group of citizens do not and cannot possess such power. When a municipal ordinance commits the exertion of the police power to the option of individuals to determine whether the use of property for a purely lawful purpose offends health, safety, or welfare, such ordinance violates the fundamental principles of police power. . . ."*