## Socony Mobil Oil Co., Inc., v. Zoning Board of Adjustment

*Thorp, Reed & Armstrong,* for appellant.

*Brandt, Riester, Brandt & Malone,* for board of adjustment.

LENCHER, P. J., February 15, 1964. — Since the County Court of Allegheny County has exclusive jurisdiction here in the Fifth Judicial District in all cases of appeal from zoning boards of adjustment or zoning boards of appeals under the various zoning laws of all municipalities in this judicial district where appeals have been provided to our court of common pleas: Act of May 5, 1911, P. L. 198, sec. 6, as amended, 17 PS §626; in open court we heard the appeal of the Socony Mobil Oil Company, Inc., from the refusal of the Zoning Board of Adjustment of Ross Township to grant its application to construct and operate a gasoline service station indicated herein. Had we taken no addi-

tional testimony, our scope of review would be limited to determine only whether the zoning board abused its discretion or committed an error of law: Lance Appeal, 399 Pa. 311; but we did take additional testimony and under the pertinent township code may now consider and dispose of the matter on its merits. We are authorized to reverse or affirm in whole or in part, as to us may appear just and proper: Dooling's Windy Hill, Inc. v. Springfield Township Zoning Board of Adjustment, 371 Pa. 291, 89 A. 2d 505. Even where an applicant is an equitable owner, he may petition and make application for zoning permits: Elkins Park Improvement Assoc. Zoning Case, 361 Pa. 322, 64 A. 2d 783. In open court, therefore, we heard the testimony of the interested persons, adjoining and objecting neighbors, and are constrained by the evidence to make the findings of fact, infra: Socony Mobil Oil Company, Inc., (hereinafter called "Socony") a New York corporation, with an office on Robb Street, McKees Rocks, Allegheny County, Pa., on October 8, 1962, entered into an agreement with Howard C. Miller and Philopena L. Miller, his wife, Chester T. Kasimirsky, unmarried, and George E. Kasimirsky and Norma J. Kasimirsky, his wife, for the purchase of property in Ross Township, Allegheny County, Pa., fronting 319.27 feet on the Perry Highway, which property has presently constructed on it a building known as "The Four Mile Inn", and being numbered 4317 Perrysville Avenue.

This agreement of sale provides for a total consideration of $62,500, of which $6,250 was paid at the date of signing. Of this initial payment, $200 was allocated on an option to purchase. A closing date of February 28, 1963, was specified, but performance of the contract by the purchaser was conditioned upon the seller obtaining from all State and municipal authorities, and delivering to the purchaser all necessary licenses, permits and other authorizations required for the erection,

maintenance and operation on the premises of a gasoline service station. The subject property, in addition to its aforesaid frontage on the Perry Highway, more or less opposite the juncture of Ivory Lane with said highway, extends back an average depth of 226 feet to the right-of-way of the Pittsburgh Railway Company, and extends along said right-of-way, a distance of approximately 316.34 feet. Under the applicable zoning ordinance of Ross Township, being ordinance no. 446, enacted into law on November 28, 1949, the area in which the subject property is situate was zoned commercial "B", this being one of two commercial zone districts in the township, the other being identified as commercial district "A". Commercial district "B" specifically prohibits the use of land for gasoline service stations. Commercial district "A" prohibits all uses which were prohibited in commercial district "B", thus establishing that commercial district "B" is a less restricted area than commercial district "A", but then specifically prohibits use of land for gasoline service stations, "other than those having off-street parking for not less than six (6) automobiles". Section 11 of article IV of the ordinance provides as follows:

"In Commercial Districts a Station for the storage and service of fuel, lubricating oil and accessories for motor vehicles may be erected or extended provided no portion of the same or any of its equipment shall be placed closer to the street line than thirty (30) feet nor closer thereto than the line, fixed by this ordinance, for buildings upon the adjoining lots; and no permit, therefore, shall be issued unless there are filed with the application the written consents of the owners, in interest and number, of a majority of all the property fronting upon the same block within two hundred (200) feet of the site in question. In computing the percentage of consents required under this provision, so much prop-

erty as is already used for Public Garages and Gasoline Service Station shall be counted as consenting, but property owned by the applicant shall not be included in such consents." Section 35 of article XI of the Ordinance provides, in part, as follows: "To authorize upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardships and so that the spirit of the ordinance shall be observed and substantial justice done."

Socony endeavored to obtain the consents called for by said section 11, and although it received a substantial portion of the requisite number, it was unable to obtain them all. Although the aforesaid sales agreement calls for the seller to obtain the necessary permits and authorizations, Socony, in keeping with its policy in such matters, made application on or about February 13, 1963, to the Building Inspector of Ross Township for a permit to erect a gasoline service station on said tract of land. The application was refused because the petitioner had not secured the written consents of the number of near-by property owners required by said section 11 and also because the proposed set-backs of the gasoline pump islands, as set forth in a submitted plan of the station, did not comply with the set back requirements of the zoning ordinance. Socony promptly appealed from the action of the Building Inspector to the Zoning Board of Adjustment for Ross Township, as was authorized by the zoning ordinance, and on February 28, 1963, a public hearing was held, at which no protestants appeared to contest the application and no testimony was taken, although the positions of Socony and the owners of the subject property were stated.

At this hearing, petitioner contended that section 11 of the ordinance was unconstitutional in requiring the

consent of neighboring property owners, and that the ordinance was discriminatory in that a gasoline service station was permitted under commercial district "A", an obviously more restrictive district, but was not permitted under the provisions of commercial district "B". Evidence was also submitted in support of a request for a variance, showing unnecessary hardship to petitioner and to the property owners. On March 25, 1963, the said board of adjustment issued its written order, denying a permit to petitioner, saying that although it was cognizant of a certain hardship, it was reluctant to waive the requirement of the written consents. A portion of the building constructed on the subject property is very old, it being thought to have been built in 1819, and this original portion, as well as subsequent enlargements thereto, have been used as a public house or tavern through its ensuing history. In 1954, it was acquired by the said present owners by purchase from Mr. and Mrs. Michael Kasimirsky, the parents-in-law of the said Howard C. Miller, for a consideration of $75,000. In 1957, Mr. Miller's brothers-in-law acquired some interest in the property and became active in the enterprise. The present owners invested an additional $5,000 in the capital improvement of the property. The present operation is classified as a bar-restaurant, although the bar business is minimal and the major activity is a reservation business for banquets and specialized parties. The operation of the property by the present owners has been a deficit operation, despite the full-time work contributions made by Mrs. Miller and by Mr. Chester Kasimirsky, and the part-time contributions made by the other owners.

One year after the acquisition by Mr. and Mrs. Miller, efforts were started to dispose of the property, it being listed with Multi-List realtors in 1955. In addition to the offer made by Socony, the Boron Oil Company and the Atlantic Refining Company expressed

interest in the property and made concrete offers which were ultimately withdrawn. Inquiries as to the possible purchase of the property were made by others who would have continued its present use as a tavern-restaurant, but these were never accompanied by hand money, and no written agreements ever ensued. Any such offers included the acquisition of the owners' liquor license and equipment, and none of them were in an amount comparable to the offer made by Socony which was for the land and building only, the building, of course to be razed, to make way for the new service station facilities. The tract is level on its frontage, but on its south end had a level depth of only about 40 feet, and in the center to a depth of about 75 feet. On the north end there is no depth of any moment, but there is a driveway which lowers to a small parking lot in the rear. The drop-off from a level area is precipitous and continues at a substantial downgrade to the Pittsburgh Railway Company right-of-way at the rear. Because of the limited level areas, and because of the Commercial zoning, there have been no inquiries made to acquire the property for residential purposes.

In the opinion of Mr. Harold Smith, Real Estate Representative of Socony in this area, a man of 32 years' experience in the real estate activities of the Company, the property is uniquely suitable for a gasoline service station property, not only because of its location on a well-traveled traffic artery and because of the influx of vehicles from Ivory Lane, but also because of its topography. The proposed service station will be a two-way station, of the most modern design, with porcelain enamel on the front and two sides and with lighting which will keep any resulting glare to a minimum. There will be provision for off-street parking for approximately 60 cars. Approval of all of the appropriate departments of the Commonwealth of Pennsylvania

has been obtained. Directly to the south of the subject property, and contiguous to the parking area of the subject property, is property now being used as an Amoco Gasoline Station. Next to the Amoco station, proceeding in the southerly direction towards the City of Pittsburgh, is a four-apartment building, which was constructed after the Amoco station had been in existence. The rest of the property to the south within the 200 feet specified by the zoning ordinance is residential, but beyond the 200 feet there is an Esso Service Station property and an automobile dealer with repair shop. Immediately north of the subject property is a residence, after which there is a garden-supply store. A further residence property completes the 200 feet to the north of the subject property, but the general character of frontages on Perry Highway in that direction is mixed, consisting of residence properties, grocery-type stores, a bar, another service station, and an automobile supply store. At the time the present owners acquired the subject property there was a gasoline service station on it under lease for many years previous, selling products of the Sun Oil Company. This operation was abandoned by the present owners, as the facilities were not adequate for modern purposes and additional parking area was required by the operation of the inn.

Are the provisions of section 11, article IV of the zoning ordinance unconstitutional in their requirement that there be filed with any application for gasoline service station use the written consents of the owners, in interest and number, of a majority of all the property fronting upon the same block within 200 foot of the site in question?

Was the refusal of the board to grant a variance on the grounds of unnecessary hardship to petitioner and to the property owners a misuse of the discretion conferred upon it by section 35 of the said zoning ordinance?

The contention upon which appellant principally relies (since, if accepted by us, it disposes of the issue), is that the requirement of consents from neighboring owners is invalid as an unconstitutional delegation of authority from the township to certain of its citizens. The zoning ordinance at the time of Socony's application for a permit contained an inconsistency which can only be construed favorably to the applicant. Commercial district "A" only prohibited gasoline service stations other than those providing for off-street parking of not less than six vehicles. This could only mean that in zone "A", facilities permitting off-street parking of six or more cars would be allowed. Now, if zone "A" allowed such service station use, a fortiori zone "B" must do so, as "A" was more restrictive than "B". "A" prohibited all uses that "B" did, and then listed some additional ones. Accordingly, it may be said that at the time in question, the gasoline service station of the type contemplated here (Mr. Harold Smith of Socony estimated 69 vehicles could be accommodated) was permitted. In addition to the effect of the specific provisions governing commercial zones "A" and "B", in article IV, section 11, direct permission for such stations is given: "In Commercial Districts a station for the storage and service of fuel, lubricating oil and accessories for motor vehicles may be erected or extended provided no portion of the same or any of its equipment shall be placed closer to the street line than thirty (30) feet nor closer thereto than the line, fixed by this ordinance, for buildings upon the adjoining lots . . ." Now, after granting this basic permission in two places of the ordinance, the township authorities confer upon the neighboring property owners the right to bar this use. No reasons need be given by such neighbors. The refusals may be completely arbitrary and capricious. Consents may be given to one oil company, as in the case of the existing Amoco station, and withheld from a competi-

tor. One property owner may be denied the use of his premises for such purposes, simply because he is not a favorite of his neighbors, and another may be granted this privilege for no reason other than he is well-liked.

Our careful consideration of the guidance given us by our Supreme Court in Perrin's Appeal, 305 Pa. 42, 156 Atl. 305, and Hertrick Appeal, 391 Pa. 148, 137 A. 2d 310, and particularly, note 2 at the bottom of page 154 of the latter, and the concurring opinion therein by Mr. Justice, now Mr. Chief Justice Bell, move us to declare that the requirement for consents relied upon by the refusal for the application involves such a delegation of legislative power as is clearly unconstitutional. Herein we underscore a case cited in Perrin's Appeal, supra, by our Supreme Court: Washington ex rel. Seattle Title Trust Company v. Roberge, 278 U. S. 116, 49 S. Ct. 50. And a fortiori at bar, where the ordinance in two places countenances gasoline service stations, but then imposes a positive condition that consents of neighbors must be obtained, subject to no control, but susceptible to whimsical, arbitrary and biased application, there is a clear abdication of authority and an unconstitutional delegation of power. Once the offending provision is removed, there is no basis for the refusal of the permit. The question of the set back of the gasoline pump islands was not determined by the board of adjustment because of their refusal of the permit on the other grounds stated. Socony is entitled to a variance under that provision of the ordinance which empowers the board of adjustment to grant variances which will not be contrary to the public interest and which will, owing to the specific conditions, prevent unnecessary hardships.

The testimony in this case clearly shows that the property by its physical characteristics has a limited use and that in the eight years' experience of the owners in endeavoring to sell it, there has been no satisfac-

tory market other than a sale for the proposed use. Their capital investment is $80,000, and in their opinion, if they are permitted to make the present sale to Socony for $62,500, they will be able to dispose of the liquor license and the equipment and fixtures in the premises for such additional amount as will enable them to avoid a loss. If this use of property is denied to them and the present sale is consequently lost, they will be compelled to continue the operation of a business which has been steadily losing money, and into which they have been required to put additional resources. Mr. Miller, one of the owners, has been compelled to seek other employment to meet the living expenses of his family. Granted that economic hardship, as such, or the failure to make a profit is not of itself within the definition of unnecessary hardship unique or peculiar to the property involved. But a certain point is reached where the facts clearly go beyond mere economic hardship; where any legitimate or reasonable use is extremely difficult and this is particularly noteworthy where a proposed variance is not remotely contrary to public safety, health and general welfare and, on the contrary, the refusal leaves other and similar permissible commercial uses untouched so that the refusal having no relation to public health and/or safety, actually visits patent discrimination on this one property alone. That discrimination is not only immediate and particular; we have already attempted to indicate the total absence of any differentiation as between purely commercial uses in either or any commercial district here involved. The proposed use is consistent with circumstances in the area, as another service station property is immediately adjacent to it, and, in fact, a portion of the subject property had formerly been used as a gasoline service station. Some of the objecting property owners have constructed buildings or have acquired properties in the area with knowledge of the

commercial character of this side of Perrysville Avenue at the point in question, and after a service station operation was already in existence. The improper and harmful discrimination against the applicants is manifest under these facts and circumstances.

The operation of the Four Mile Inn brings to the site large quantities of people and vehicles, often late hours result from the activities there, and it would appear that the present use of the property is in all respects as inconvenient from these aspects as would be the operation of a modern service station. Considering the unique suitability of the site for the proposed use and its inappropriateness for most other uses, and the unsuccessful efforts of the owners to make other favorable dispositions of the property, this is clearly a case in which the denial of this permit will effect an unwarranted hardship, and is a situation which evokes the powers of the board of adjustment to grant a variance. The refusal of the board to do so was a misuse of its authority which should be corrected on this appeal. We borrow the language from the Dooling case, supra, where the Supreme Court found an unusual and most difficult hardship and discussed the public interest in the following words: ". . . the use of the property as a hotel will in no way change the character of the neighborhood . . . 'The premises in question are situated in a business district as defined by the ordinance . . . the neighborhood is distinctly commercial in character, and the trend is toward increasing commercialization . . . The premises had actually been used for these purposes in the past . . .' With the requirement respecting the public interest . . . expressly in mind, the court below justifiably concluded that 'the variance requested would not be contrary to the public interest.' "

Socony is entitled to the permit to construct a gasoline service station on the premises at bar, such is permitted under the provisions of the zoning ordinance

with the consent requirement removed; to deny the permit results in confiscation, under this holding, under the provisions of the ordinance, under the guidance given us by the Supreme Court of Pennsylvania, because of the peculiar circumstances applicable only to the subject land.

We believe the applicant properly meets the issue raised by the zoning board in its contention that with the removal of the consent provision, we are still confronted by the categorical prohibition of gasoline service stations in article III, sec. 6, relating to commercial zone "B", in which zone the subject property is located. This appears to us the crux of the constitutional question and of sufficient importance to merit a further refutation.

Appellee would have the court hold that service stations are in fact prohibited in commercial "B" but allowed in commercial "A", an admittedly higher zoning classification, if the simple requirement of more than six-car off-street parking is met, which the applicant does many times over. To give this construction to the ordinance is to make it a contradiction in terms and to characterize it as unreasonable legislation. In commercial "A", land may be used and buildings erected for any purpose, except those specifically prohibited. The first category of prohibition is all the uses prohibited in commercial "B". Hence, it would seem that service stations are prohibited in "A" also, having been prohibited in "B"; but then item (4) modifies this prohibition; stations are permitted with the requisite off-street parking. Now, this same modification must be applied to the prohibition which has been carried over from commercial "B", or the statute is flagrantly inconsistent in its terms and meaningless, a result which must be avoided, if possible. The wording of commercial district "A" further recognizes service stations by providing in item (5) that vehicles may be parked on ser-

vice station premises not longer than the time required for servicing. Also, section 11 of article IV, which contains the consent provisions, says: "In Commercial Districts a Station for the storage and service of fuel, lubricating oil and accessories for motor vehicles may be erected, etc." Note that it does not say, "In Commercial District 'A' ", but uses the broad term to include both Commercial Districts. To carry the appellee's contention to its extreme: if the ordinance prohibited gasoline service stations in the industrial zone, but allowed them in residential zones, could it for one moment be said that any court would enforce such arbitrary regulation? Yet, with allowance for degree only, appellee is asking this court to uphold a prohibition in commercial zone "B", which does not exist in commercial zone "A", if off-street parking is provided; a capricious distinction which cannot be founded in reason, and no reason has, in fact, been advanced by appellee. All of the foregoing discussion, of course, is predicated on the unconstitutionality of the consent provision.

The Ross Township Commissioners, in passing the ordinance, indicated that only they considered a gasoline service station a more desirable activity than the operation of taverns. Taverns are prohibited in commercial district "A", but gasoline service stations with a minimum of off-street parking are permitted.

Appellants are asking for an admitted up-grading of the use, which should be looked upon favorably, as was done in O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379, 120 A. 2d 901 (1956). O'Neill is discussed in Richman v. Zoning Board of Adjustment, (391 Pa. 254, 137 A. 2d 280), holding that the possibility and probability of undue hardship is not a sufficient ground for a grant of a variance, wherein the Supreme Court notes while reliance could be placed upon the O'Neill case, in that case an application was

made for a variance to permit the use of property in an "F" residential district as a ballet school in which, although the permissible uses were limited essentially to single and multiple family dwellings, hotels, police and fire stations and telephone exchange buildings, were included. In granting a variance, in addition to a finding that the proposed use was less obnoxious than the former use of the premises as a garage and that it would in no way affect the peace and quiet of the neighborhood, the board also found that the property could not easily be converted into a residence.

We believe that appellant in reply brief properly looks for help in the Dooling's case already cited, supra, wherein the Supreme Court says, "The hardship to the plaintiff, if it were prevented from using the premises as a hotel, was satisfactorily established. As the hearing judge found on substantial evidence and the court en banc confirmed, 'The building on the demised premises, with the parking facilities adjacent thereto, are suitable and adequate to operate therein a restaurant and hotel.' And, further, the plaintiff 'has been operating its restaurant at a loss.' "

We think significant too, in this same connection, that there is a gasoline service station immediately adjacent to the subject land of this appeal; that service station was erected six or seven years ago after the enactment of the zoning ordinance and we ought to prevent, if at all possible, the manifest discrimination that would result in the disallowance of the application at bar under the same ordinance which does permit the same business next door.

The appeal is sustained, the zoning permit and other officers pertinent to the situation and appeal are ordered and directed to issue the permit as prayed for; exception noted and bill sealed.