Dunlap Appeal.

Argued January 8, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Fronefield Crawford,* with him *MacCarter & Crawford,* for appellants.

*John V. Diggins,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1952:

This is an appeal from a decree affirming a decision of the Zoning Board of Adjustment of Sharon Hill, which refused to grant appellants a variance permitting them to construct row houses in that community. Appellants attack the constitutionality of the ordinance which prohibits row houses on the theory that it invades vested rights and is an unreasonable classification.

Appellants' "vested rights" are said to stem from the expenditure between 1928 and 1930 of $27,971.16 for installation of water, sewer, and gas mains, and street curbing in 'accordance with an established plan for development of their property. Laterals from the various mains were so installed as to accommodate row housing, and maximum use of them can be made only if such housing is permitted. At the time of their installation, no permit for the improvements was required or issued and no zoning ordinance prohibited the type of housing contemplated. Appellants' theory is that, when they in good faith effected these substantial improvements with a view toward using the property for row housing, they acquired a vested right to proceed with such a development.

Adoption of appellants' contention would require a substantial enlargement of the rule announced by this Court through Chief Justice MOSCHZISKER in *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195 (p. 162): ". . . a property interest arises where, *after permit granted,* a landowner begins construction of a building and incurs

liability for future work." (italics supplied) We recently reaffirmed this principle: *Lower Merion Township v. Frankel,* 358 Pa. 430, 57 A. 2d 900. But in this case the borough took no affirmative action which would encourage appellants or lead them to believe that the proposed development met with the sanction of the community. Appellants could not by laying pipes and sewers in the ground forever defeat the right of the community to decide by appropriate legislative action the *type of homes* which it might thereafter desire to permit. No case in this Commonwealth has ever gone that far. Appellants cite cases from other jurisdictions which contain language apparently supporting their contention, but our study reveals that each of them involved situations where the municipality was aware of the activities of the complainant and passed the disputed ordinance specifically to block the proposed development: *Rosenberg v. Village of Whitefish Bay,* 199 Wis. 214, 225 N. W. 838; *Darlington v. Board of Councilmen of City of Frankfort,* 282 Ky. 778, 140 S. W. 2d 392. There is no suggestion in the record of the present case that the ordinance was directed against appellants. On the contrary, it appears to be general legislation adopted by the borough in entire ignorance of what appellants had done some sixteen years earlier. No element of equitable estoppel is presented.

We adhere to the rule that a vested right to build *in futuro* a structure which violates a zoning ordinance can only be acquired by first securing a permit and thereafter expending substantial sums in reliance thereon. This does not mean that a building actively under construction at the time of the passage of an ordinance *could not* qualify as a non-conforming use. This was the basis for the decision in *City of Coldwater v. Williams Oil Co.,* 288 Mich. 140, 284 N. W. 675, cited by appellants. In the present case it cannot be said that

the mere laying of pipes and sewers sixteen years previously brought the plan of appellants so near completion that the lots could only be used for the erection of row houses, and hence constituted a non-conforming use *in existence* prior to the ordinance.

The conclusion that no vested rights arose in this case is strengthened by appellants' failure to substantiate their contention that these improvements would have to be removed at an additional cost of approximately $30,000 if this land were used for anything but row housing. It is, of course, true that *maximum* utility cannot be made of the improvements if anything other than row houses is constructed, since there would then be an excess number of laterals. But no plausible reason has been given why appellants cannot simply abandon these buried and unused laterals or such part of them as cannot be adapted to the permitted classes of housing. One of the appellants, Floyd B. Mousley, admitted under cross-examination that twin houses complying with the ordinance *could* be constructed without removing the utilities. It has never been the rule that a zoning ordinance must permit each owner to make *maximum* use of his property. Limitation of use is fundamental to all zoning and formed the basis for the earliest constitutional attacks: *Euclid v. Ambler Realty Co.*, 272 U. S. 365; *White's Appeal*, 287 Pa. 259, 134 A. 409.

It is true, however, that the restrictions imposed on use of private property by a zoning ordinance must be reasonable: *Taylor v. Moore*, 303 Pa. 469, 154 A. 799. Appellants argue that, as applied to their particular property, the prohibition of row housing is so arbitrary and unreasonable that either (1) the ordinance is unconstitutional or (2) the Zoning Board of Adjustment abused its discretion in refusing a variance. Insofar as the variance is concerned, it is sufficient to note that

the proposed houses would comprise approximately twenty per cent of all houses in the borough.   As Mr. Justice BELL pointed out in *Lukens v. Ridley Township Zoning Board of Adjustment,* 367 Pa. 608, 80 A. 2d 765, such a wholesale change in the character of a neighborhood is a legislative—not an administrative or judicial—function.   See also *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 41 A. 2d 744.   The same is true of the problem of reasonableness of classification in general.   In order to support appellants' argument we would be required to say as a matter of law that it is unreasonable for a majority of the residents of a borough to prefer a neighborhood composed principally of single or twin houses to one containing numerous row houses.   Improvement in light, air, fire, traffic and many other conditions which the Zoning Board found to be present when row houses are restricted form an ample basis for a reasonable preference.   Cases such as *Taylor v. Haverford Township,* 299 Pa. 402, 149 A. 639, holding it unreasonable to classify as residential one tract in a highly commercialized area, are no authority for invalidating the zoning plan of a borough by holding it inapplicable to twenty per cent of the houses in the borough.

Decree affirmed at appellants' cost.