Harrisburg *v.* Pass, Appellant.

Argued November 17, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Stanley G. Stroup,* with him *Joseph Nissley* and *Livengood and Nissley,* for appellants.

*Spencer G. Hall,* City Solicitor, with him *James S. Bowman,* Assistant City Solicitor, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 5, 1953:

Defendants were found guilty by an alderman on a charge of having begun the construction of a building on a tract of land owned by them without having first secured a zoning permit required by an ordinance of the City of Harrisburg. They appealed to the Court of Common Pleas of Dauphin County, which affirmed the conviction. Defendants now appeal from that affirmance.

In November, 1949 defendants purchased the land in question, located at the northeast corner of Front and Vaughn Streets in Harrisburg. Planning to erect and conduct thereon a motel or automobile tourist camp, they employed an architect and applied for a building permit on March 9, 1950.* At that time there was no zoning ordinance in force which prohibited such construction and operation. Four days later, on March 13, some of the neighbors filed a bill in equity to enjoin the erection of the proposed motor court on the ground that it would constitute a nuisance per se, and

---

* The proposed tourist camp was to contain a manager's apartment, offices, 29 bedrooms, bathrooms, heating plant, auxiliary rooms, and an open area in front for the parking of automobiles.

on March 20 the same or other neighbors filed a bill to enjoin the City officials from issuing the permit for which defendants had applied. On April 5 defendants instituted an action in mandamus against the City to compel the issuance of the permit. On August 3 the court enjoined defendants from erecting and operating the tourist camp but refused either to restrain the City from issuing the permit or to mandamus it to do so; on August 22, however, the court ordered the City to issue the permit. Accordingly the permit was issued to defendants on September 7. From the decree of the court enjoining them from constructing and maintaining the tourist camp defendants appealed to this court, which on May 21, 1951 reversed the decree of the lower court and held that such erection and maintenance should not have been enjoined as a nuisance per se; (*Menger v. Pass,* 367 Pa. 432, 80 A. 2d 702). On October 3, 1950 the City of Harrisburg had meanwhile enacted a zoning ordinance under which an area including defendants' land became classified as an R-1 Residence Zone, in which there were permitted only single family detached dwellings, churches, schools, libraries, government buildings and parks. After this court reversed the injunction granted by the court below, defendants, without having applied for a zoning permit, began excavation work preliminary to the construction of the tourist camp on their land, whereupon, on June 15, 1951 the prosecution before the alderman, which is the subject of the present litigation, was instituted.

The first attack made by defendants is on the title of the City's zoning ordinance, which is as follows: "An Ordinance regulating and restricting the bulk and size of buildings and other structures, the location and use of buildings, structures and land for trade, industry, residence, or other purposes; establishing zones

and the boundaries thereof for said purposes; providing for the appointment of a Zoning Administrator and a Board of Appeals and setting forth the duties and functions of said Administrator and said Board; providing for the administration and enforcement of this Ordinance including the payment of fees; and providing penalties for violation thereof." It is contended that this title does not expressly indicate that a zoning permit from the Administrator is required under section 18(c) of the ordinance prior to construction of a building and therefore it does not comply with the requirements of Article III, section 3 of the Constitution and Article X, section 1011 of The Third Class City Law of June 23, 1931, P. L. 932. There has been so much previous discussion by this court in regard to the titles of legislative acts and ordinances that it would be a mere work of supererogation to attempt to add thereto. Reference is made to the principles enunciated in such authorities as *Commonwealth v. Stofchek,* 322 Pa. 513, 185 A. 840; *Gumpert's Estate,* 343 Pa. 405, 23 A. 2d 479; *Moreland Estate,* 351 Pa. 623, 42 A. 2d 63; *Commonwealth v. American Gas Company,* 352 Pa. 113, 42 A. 2d 161; and *Commonwealth v. Fireman's Fund Insurance Company,* 369 Pa. 560, 87 A. 2d 255. Those cases establish that the title of an act need not be an index of its provisions nor a synopsis of its contents, that it is sufficient if it gives notice of its tenor to interested persons of a reasonably inquiring state of mind, that so long as it indicates a general subject to which the provision involved is germane or incidental the provision itself is sufficiently contained therein,—in short, that the title is not objectionable unless a substantive matter entirely disconnected with the named legislation is included within the folds of the act. The statement in the title of the present ordinance that there is provision therein

for its administration and enforcement including the payment of fees is certainly sufficient to put an inquiring person on notice that a zoning permit is required; indeed that there ordinarily is such a requirement is common knowledge among all persons interested in zoning legislation.

What is probably the chief contention of defendants is that, prior to March 13, 1950, when the equity suit was filed to restrain them from proceeding, they had paid $3,380 in architect's fees for plans of the proposed buildings and for a survey of the land, and, after May 21, 1951, when this court released the injunction that had been entered against them, they expended for excavation work and building materials a total amount of $11,200 in reliance on the building permit which had been issued to them on September 7, 1950. They point to the well established principle of law that when a property owner has in good faith expended money or incurred liabilities in reliance on a building permit obtained under the then existing law, he acquires a vested right which entitles him to protection against a subsequently enacted zoning ordinance: *Herskovits v. Irwin*, 299 Pa. 155, 149 A. 195; *Lower Merion Township v. Frankel*, 358 Pa. 430, 57 A. 2d 900. They lose sight of the fact, however, that in order to enable the owner to claim such right he must establish that his expenditures were made in reliance on a building permit previously issued to him, that they were made before the enactment of the new zoning ordinance, and that they were substantial in amount: *Gold v. Building Committee of Warren Borough*, 334 Pa. 10, 5 A. 2d 367; *Ventresca v. Exley*, 358 Pa. 98, 103, 56 A. 2d 210, 212; *A. N. "Ab" Young Company Zoning Case*, 360 Pa. 429, 61 A. 2d 839; *Mutual Supply Company Appeal*, 366 Pa. 424, 77 A. 2d 612; *Dunlap Appeal*, 370 Pa. 31, 87 A. 2d 299. It is to be

noted that in the *Herskovits* case the property owners had entered into a building contract involving a substantial obligation on their part and in the *Lower Merion Township* case the owner had likewise incurred large expenses and obligations in furtherance of his contemplated use of the property. In the present case the sums paid by defendants for architects' fees and the survey were expended by them *before* they obtained a building permit, and the amounts paid by them for excavating work and building materials were expended long *after* the new zoning ordinance had gone into effect; clearly, therefore, defendants do not come within the protection of the principle of law which they invoke. Presumably recognizing this, they seek to meet the difficulty by asserting that if it had not been for their inability to obtain the building permit until September 7, 1950, and the maintenance of the injunction against them until May 21, 1951, they would have promptly proceeded with the work of construction and have expended probably as much as $200,000 for that purpose before the new ordinance was enacted; they argue therefore that the City should not be allowed to take advantage of that situation. Apart from the fact, however, that any conclusion would be purely speculative as to what they might or would have done, had they been free to do it, in the 26 day period between the issuance of the building permit and the enactment of the zoning ordinance, the important point is that the City of Harrisburg itself did not at any time enjoin or restrain them from proceeding to build. As already stated, defendants applied for a building permit on March 9, 1950, and only eleven days later their neighbors filed a bill in equity to enjoin the City officials from granting it; obviously the City was thereby prevented from issuing it until, on August 3, the court denied the injunction against the City, and,

on August 22, ordered it to issue the permit, which it did on September 7. There is nothing whatever in the record to indicate that the City was in collusion with defendants' neighbors in prosecuting the injunction suits or that it deliberately attempted to delay the issuance of the permit until the new ordinance could be enacted. If the *City* had instituted the actions or joined in the attempt to restrain defendants (as was the case in *City of Coldwater v. Williams Oil Co.,* 288 Mich. 140) there might be more merit in defendants' contention, but certainly the City cannot be prejudiced in its legislative functions and especially its police power by actions taken by individuals without its authority or participation.

There is no merit in defendants' argument that their property qualifies as a nonconforming use under section 17 (d)(1) of the ordinance, which provides that a nonconforming use in existence at the time of the adoption of the ordinance may be continued subsequently. There was no use of any kind in existence when the ordinance was adopted; clearly, the mere fact that a particular use may have been in the contemplation of the owners would not bring the property within the coverage of the section in question; (cf. *Dunlap Appeal,* 370 Pa. 31, 33, 34, 87 A. 2d 299, 301). Defendants also urge that their property qualifies under section 16 (b) of the ordinance, which provides that "All buildings or structures for which building permits have been obtained . . ., and the excavation for which or the construction of which has been begun prior to the effective date of this Ordinance may be completed and used in accordance with the original plan." The short answer to this contention is that there was no excavation work or construction begun prior to the enactment of the zoning ordinance.

Finally, defendants cite well recognized authorities to the effect that if a zoning ordinance bears no reasonable relation to any legitimate police power purpose, but unlawfully discriminates against an owner's property, it would be confiscatory of his property rights and consequently invalid: (*Lower Merion Township v. Frankel*, 358 Pa. 430, 433, 57 A. 2d 900, 901; *Lukens v. Ridley Township Zoning Board of Adjustment*, 367 Pa. 608, 614, 80 A. 2d 765, 768; *Lord Appeal*, 368 Pa. 121, 125, 126, 81 A. 2d 533, 535). Here, however, there is no basis for the application of that principle. It was within the reasonable discretion of the City Council whether this land should be restricted to residential purposes, and there are no facts in the record to justify a conclusion that that discretion was exercised in bad faith. Apparently for a considerable distance on Front Street both north and south of Vaughn Street the entire area consists mostly of single family dwellings and vacant lots. In the case of *Menger v. Pass,* previously referred to, the lower court found as a fact that defendants' land is in a strictly or predominately residential neighborhood. There has been little or no invasion of the district by commercial interests, nor has the increased vehicular traffic on Front Street effected any change in its residential character. There is nothing here appearing, therefore, to warrant the condemnation of this ordinance as arbitrary, unjustly discriminatory, or confiscatory in its application to defendants' property.

The decree of the court below affirming the judgment of the alderman is affirmed at the cost of appellants.