## Wanamaker v. Whitemarsh Township

*Henderson, Wetherill & O'Hey*, for appellants.

*Elmer L. Menges*, for appellee.

The facts appear from the following excerpts from the opinion of:

GROSHENS, J., July 19, 1960.—This is an appeal from the disapproval of the supervisors of Whitemarsh

Township to a proposed subdivision of a tract of land containing approximately 63 acres. On November 4, 1959, the land was sold by the Disstons to the Costellos. The buyers proposed to subdivide the tract into lots that are 25,000 square feet and to erect homes valued between $35,000 and $55,000. In pursuance of this objective, the buyers obtained the services of a registered engineer to prepare a plan. This plan was submitted to the supervisors of Whitemarsh Township on December 10, 1959, and a check in the required amount of $200 sent to them as a filing fee. The planning commission on December 14, 1959, reported to the supervisors that the plan did not conflict with existing zoning and recommended minor adjustments. This report was not made known to the Disstons or the Costellos. The Costellos and their agent requested repeatedly that the supervisors advise them of their suggestions with regard to the plan, but no communication was received by them. During this time the Costellos engaged engineers to take percolation tests of the site and expended other sums of money in anticipation of the approval of this plan.

In the interim, swift action by the supervisors was taking place to prevent this subdivision under the proposed plan. Subsequent to the purchase of this property and the submission of the plan, the supervisors requested that their solicitor draft an amendatory zoning ordinance. The first public advertisement of a proposed change in zoning, which would affect the tract to be subdivided, appeared three weeks after the plan had been submitted. No notice of this proposed enactment was given to the Costellos. A public hearing on this amendment was held on January 14, 1960, and the amendment provided that where there was approved public water available, or an approved public sewer system available, but not both, that a minimum lot size of one acre would be required. The avowed purpose

of the amendment is to protect health by requiring larger lot areas, under the above circumstances. Until this time the supervisors had ordered no percolation tests to determine the necessity of such an ordinance. Their own experts testify that lot area is not a decisive factor in determining the suitability of on-lot sewage disposal. The ordinance was adopted on April 14, 1960.

On March 17, 1960, plaintiffs were informed by the township solicitor that their plan could not be approved due to the pending ordinance. On April 28, 1960, written reasons for the disapproval were given by the supervisors. During all of this time there was no attempt by the supervisors to give plaintiffs notice of any defects in their plans or to give them opportunity to cure such defects and comply with all reasonable requirements. This appeal followed a few days after the notice that the plan would not be approved.

This appeal is brought by the legal owners and by the equitable owners of the land to be subdivided. There is a valid agreement of sale between these sets of appellants which requires the buyers of the tract to submit a subdivision plan in conformity with the existing ordinance. All of these appellants are proper parties to appeal from the decision of the supervisors disapproving the plan. The sellers of the ground have a very definite, immediate, direct and pecuniary interest in the outcome of this case. See Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 524. The seller was a "person aggrieved" in In re Application for Certificate of Occupancy, for Kitchen Property: 25 Northamp. 167. The buyers are manifestly the persons aggrieved since they are the subdividers and they submitted the plan: Kelly v. Whitemarsh Township Board of Supervisors 3 D. & C. 2d 197, 200 (1954).

The fact that this appeal was filed prior to the written disapproval of the supervisors does not affect

the decision in this case. It is clear the decision of the supervisors to disapprove the plan was made prior to the date of the appeal. The solicitor for the township in a letter to petitioners' attorney advised them of this fact. The requirement of a written disapproval and the reasons therefor was fully complied with prior to the hearings held by the court in this matter and removed that objection. The court has held three hearings, heard arguments of counsel and received their briefs of the law, the issues have been fully presented and argued, and it is too late to raise the technical objection that the appeal was taken prior to the written disapproval of the supervisors.

The township seeks to support the disapproval of this subdivision plan by the reason that it does not conform to the amendatory ordinance passed four months after the submission of the plan, and the recognition by the planning commission that the plan conformed to the then existing regulations. The township freely admitted that action on the plan was not taken because of the proposed ordinance. In a recent case of the Supreme Court of Pennsylvania this argument was most pointedly rejected.

"This argument is without merit. An unpassed bill in City Council, as one in the State Legislature, has no more governmental authority than a scribbled note on the back of an envelope in the pocket of a legislator": Yocum v. Power, 398 Pa. 223, 226 (1960).

At page 227 the court recognizes one of the basic rules of fair play by saying:

"As nothing can be more unjust in criminal law than an ex post facto law, so nothing is more frowned on in civil law than a procedure which has the effect of making illegal what the law has already recognized as legal. No lover of American sports would approve

of changing ground rules to favor one side or the other after the game had begun."

There is no dispute concerning the conformity of the plan to the zoning law in effect when submitted. It is only by a change in the rules that the proposed plan is defeated. If the simple expediency of an amended ordinance could alter the right of appellants in this case, then it can be done in any case and the known certainty of the law which is the safety of all will be cast away. However desirable the proposed amendment, it has come too late to defeat appellants' rights under the law upon which they relied and had a right to rely.

The supervisors contend that petitioners had no vested rights and therefore the cases of Yocum v. Power, supra, and the authority cited therein are distinguishable because in those cases a building permit had issued and they then had a vested right. They, in effect, argue that by withholding action deliberately they escape the plain mandate of the law. The statement carries its own answer. The mere refusal to do what they ought to do can not place them outside of the well-reasoned rule of law found in Yocum v. Power, supra. The rights of appellants in this case rest on their reliance upon existing law. This court's power to hear and decide this appeal cannot be taken away by the enactment of an ordinance a number of months after submission of the plan. Whether we call this a vested right or not, it is clear that the plan could not be defeated because of the amendatory ordinance.

Supervisors of a second class township are vested with specific executive and legislative powers for local government. As legislators they adopt ordinances and regulations necessary for the operation of township government and for the protection of the health, safety, morals and general welfare within the scope

of the enabling statute, called "The Second Class Township Code." As executives they and their appointees enforce the ordinances and regulations, pass upon subdivision plans and the like, issue permits, and dispatch all manner of business arising between a local municipality and its people.

Ordinances and official acts of supervisors are presumed to be in accordance with The Second Class Township Code and the Constitution of the Commonwealth. However, there are times when the court should pierce the presumption of regularity and pry into the facts, the acts, the words and the motives behind the ordinances and official acts of supervisors.

We have done that in this case, and we have found that these supervisors, in their executive capacity, have sat upon their hands with respect to the lawful rights of appellants, to allow them time, in their legislative capacity, to outlaw the rights of appellants.

Such official concurrent inaction and action, deliberately and purposely designed to impair, if not to destroy, valuable private property rights, cuts close to the line of unlawful conspiracy, even if it takes place under the guise of a lawful exercise of the police power to protect the public interest.

The statements made by Supervisor White at the private session requested by the supervisors and held on the afternoon of December 10, 1959, are shocking to say the least. Why should he be concerned at that time about the possible opposition from the future dwellers on the Disston tract to a possible future application to rezone the Cricket Club property for limited industrial use? The power of supervisors to zone and to pass upon land subdivision plans is not an unbridled power to pick and to choose what private interests may be enhanced or hurt by official action or the refusal of official action.

The case of A. N. "Ab" Young Company Zoning Case, 360 Pa. 429, cited by the township is a case where application for a building permit was made subsequent to advertisement of the proposed amendment and is therefore distinguishable. The case of Harrisburg v. Pass, 372 Pa. 318, is one where the delay in issuing a permit was not a deliberate act by the city to delay until passage of the amendatory ordinance. The last case cited by the township is Logan v. Bickel, 11 D. & C. 2d 405 (1956). In that case there was again no deliberate delaying by the borough in order to pass an ordinance and block the proposed plan of the petitioner. Furthermore, that court did not have the benefit of the recent decision of the Supreme Court of Pennsylvania, and we do not find it to be controlling under the unusual factual situation in this case nor under our determination of what the law is today.

There is only one conclusion that this court is able to make from the history of events, from the testimony of witnesses, from the statement of supervisors and from the contents of the amendatory ordinance, that the ordinance was special legislation aimed directly at the Disston tract and is, therefore, unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application to this property. It is unnecessary to recite again the findings of fact in this case. It is enough to say that this court is convinced that the ordinance passed by the township was done as an attempt to prevent the subdivision of this property under the proposed plan and the existing ordinance. This is abhorrent to the law: Yocum v. Power, supra; Shapiro v. Zoning Board of Adjustment, 377 Pa. 621.

The reasons given for the disapproval of the subdivision plan are three, namely, that the preliminary sketch is incomplete as to lot size; that the size of lots

do not conform to the amendatory ordinance and that the widths of proposed streets are inadequate for a 30-foot cartway plus sidewalk and curbs. The first reason is invalid in that the plan states the minimum size of all the lots shown and the drawing is drawn to scale and the sizes obtained in that manner. The second reason is invalid for the reasons given in this opinion. The third objection was never raised prior to the written decision of April 28, 1960. This objection should have been raised earlier: Kelly v. Board of Supervisors of Whitemarsh Township, 3 D. & C. 2d 197, 199. The good faith of this objection is open to question. However, we believe that the parties should meet and discuss this objection and attempt to meet all reasonable requirements of the township. Petitioners indicate they are willing to widen the streets and thus this objection would be removed. If the parties are unable to agree on the street, curb and sidewalk requirements, this court retains jurisdiction to hear argument as to the reasonableness of this requirement. However, we note in passing, that the township either had or had not duly adopted street, curb and sidewalk regulations as of December 10, 1959, and the parties should quickly and easily dispose of this problem. . . .

### Decree Nisi

And now, July 19, 1960, it is ordered, adjudged and decreed that the plan of subdivision be approved and be referred back to appellants and the township to make lawful changes with respect to the width of streets, curbs and sidewalks. Within 30 days of the date hereof, counsel are directed to file of record in this court a copy of the approved plan revised in accordance with this decree and a copy thereof shall be recorded in the office for the recording of deeds and shall be considered to be a part of the official plan of

the township, in accordance with section 1206-A($g$) and ($h$) of The Second Class Township Code; that the township shall pay the costs of this appeal, and that the clerk of courts shall give prompt notice of this opinion and decree nisi to the parties, who may file exceptions within (20) days after notice. If no exceptions are filed, the decree nisi shall be entered as the final decree.