Penn Township, Appellant, *v.* Yecko Bros.

Argued October 4, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused March 24, 1966.

*Carmen V. Marinaro,* for intervening appellant.

*David M. Harrison,* with him *Saul J. Bernstein,* and *Harrison & Louik,* for appellees.

388

OPINION BY MR. JUSTICE COHEN, January 4, 1966:

For a period of approximately three years the Township of Penn, appellant, considered the advisability of adopting a zoning ordinance. Subsequently, on June 28, 1962, a zoning ordinance (Ord. No. 39) was advertised. It was enacted by the township supervisors on August 13, 1962, to be effective on August 23, 1962.

On July 2, 1962, George Schmidt and Ada Schmidt entered into a written agreement with Albert Yecko and Mary Yecko, whereby they agreed to sell four acres of land to the Yeckos. The agreement contained a provision that if there was an ordinance of the township in existence prohibiting "a used auto parts business or wrecking yard being conducted in a building," all the Yeckos' hand money was to be returned and the agreement was to become null and void.

On July 9, 1962, the appellees, Yecko Bros., appeared at a public meeting of the township supervisors and requested approval for the establishment of an automobile wrecking and parts business. They were advised to contact the chairman of the planning and zoning commission since all such proposals had to be submitted to that commission for its approval pending rejection or adoption of the zoning ordinance by the board of supervisors. (Yecko Bros. were also advised that a public hearing on the proposed zoning ordinance was to be held on July 17, 1962.) Without obtaining this approval, on July 27, 1962, Yecko Bros. moved on the property in question, installed a used bus as an office, placed wrecked automobiles on the premises and erected a sign "Yecko Bros. Automobile Parts." Between that date and August 4, 1962, Yecko Bros. transacted business by selling and delivering parts for used automobiles and did a total business of $109.50.

On August 4, 1962, Sara Moody, a private citizen of Penn Township filed a complaint in equity seeking a preliminary and permanent injunction against the

appellees restraining them from maintaining an automobile wrecking and parts yard. She based her complaint upon an ordinance of the Township of Penn enacted December 5, 1952, and still in effect, entitled, "An Ordinance to promote the public health, safety, morals, and general welfare of Penn Township," which ordinance prohibited anywhere in Penn Township any automobile graveyard or junkyard for the storage or parking of used automobiles or automobile parts and decreed same to be a public nuisance.

On August 4, 1962, the lower court granted a preliminary injunction enjoining the present appellees from establishing and maintaining their automobile junkyard. On October 29, 1962, a hearing was held and the preliminary injunction granted on August 4, 1962, was dissolved. At this hearing the Township of Penn appeared and received permission to intervene as a party plaintiff. Subsequently, as an intervening plaintiff, Penn Township, filed its complaint and averred that on August 13, 1962, it had enacted a zoning ordinance which became effective August 23, 1962, and which did not permit an automobile wrecking yard on the property of the appellees.

On October 29, 1962, after the hearing at which the preliminary injunction was dissolved, the Yeckos consummated the purchase of the property from the Schmidts. At the hearing itself the lower court determined that because no special damages to the individual plaintiffs (Sara Moody et al.) were alleged or proved, they had no standing in a court of equity to restrain a public nuisance. The lower court further held that the ordinance of 1952 which prohibited the establishment of any automobile graveyard was unconstitutional as an unreasonable restriction on the right to conduct a lawful business.

In a subsequent opinion the lower court determined that the appellees had established a nonconforming use

of their property by commencing their business on July 27, 1962, and that since this nonconforming use had been created and was in existence prior to the adoption of the zoning ordinance, it was a protected use and could continue.

The lower court's determination was based upon the rationale that a nonconforming use existing at the time of passage of a zoning ordinance is protected and cannot be extinguished without violating the rights of the property owner. However, the lower court failed to recognize that before it was called upon to determine the extent of protection which should be afforded a nonconforming use, it was necessary to determine if there was a nonconforming use obtained legally and exercised in good faith and thus entitled to protection.

We have held in a long line of cases that even when an applicant is issued a building permit, unless he proceeds in good faith to incur substantial obligations in reliance thereon, the permit may be vacated or revoked if an amendment to the zoning ordinance or subsequent adoption of such an ordinance prohibits the proposed use of the land. The rule established by these cases was designed to prevent the creation of what would become a nonconforming use after the effective date of a pending zoning ordinance. It has been generally acknowledged that when a property owner in good faith has expended money or incurred liability in reliance on a building permit which he obtained under an existing ordinance, he acquires a vested right which entitles him to protection against a change in the zoning ordinance.

The rule that arises from these cases[1] is that a property owner who is able to demonstrate (1) that he has

---

[1] *Herskovits v. Irwin*, 299 Pa. 155, 149 Atl. 195 (1930) ; *Lower Merion Township v. Frankel*, 358 Pa. 430, 57 A. 2d 900 (1948) ; *A. N. "Ab" Young Company Zoning Case*, 360 Pa. 429, 61 A. 2d 839 (1948) ; *Dunlap Appeal*, 370 Pa. 31, 87 A. 2d 299 (1952) ; *Harris-*

obtained a valid building permit under the old zoning ordinance, (2) that he got it in good faith—that is to say without "racing" to get it before a proposed change was made in the zoning ordinance—and (3) that in good faith he spent money or incurred liabilities in reliance on his building permit has acquired a vested right and need not conform with the zoning ordinance as changed.

Throughout the cases in which the rule appears there runs the dominating theme of fairness and good faith. In the *Shapiro* case the municipality refused a permit to establish an activity permitted under the existing zoning ordinance and thereafter the municipality interposed contrived objections to the obtaining of such a permit. We held that the applicant was entitled to a permit since it was the municipality which acted in bad faith. This Court, in its opinion on pages 629-30, however, went on to indicate that it still was incumbent upon the permittee, in order to succeed, to act in good faith. The same rule of fairness seems to permeate our determination in the *Lened Homes, Inc.* case, supra. On the other hand, *A. J. Aberman, Inc.*, supra, and *Shender*, supra, are cases which demonstrate lack of good faith on the part of the property owner so that we refused to permit the continuation of the nonconforming use.

The facts in this litigation demonstrate the total lack of good faith on the part of the appellees. The buyer and seller both recognized that the proposed use of the property as an automobile parts business or

*burg v. Pass*, 372 Pa. 318, 93 A. 2d 447 (1953) ; *A. J. Aberman, Inc. v. New Kensington*, 377 Pa. 520, 105 A. 2d 586 (1954) ; *Shapiro v. Zoning Board of Adjustment*, 377 Pa. 621, 105 A. 2d 299 (1954) ; *Lened Homes, Inc. v. Philadelphia Department of Licenses and Inspections*, 386 Pa. 50, 123 A. 2d 406 (1956) ; *Shender v. Zoning Bd. of Adjustment*, 388 Pa. 265, 131 A. 2d 90 (1957) ; *Hertrick Appeal*, 391 Pa. 148, 137 A. 2d 310 (1958) ; *Verratti v. Ridley Township*, 416 Pa. 242, 206 A. 2d 13 (1965).

wrecking and parts yard had been proscribed by the ten year old 1952 ordinance of the township. There is no doubt that appellees had been advised that the ordinance of 1952, while an expression of the public policy of the township and while still unrepealed, was, nevertheless, not a constitutional enactment. However, appellees also knew of the township's intention to adopt a new and enforceable zoning ordinance. Their action on July 27, 1962, in occupying and using the land was a calculated device resorted to in the belief that the 1952 ordinance was unconstitutional and that the proposed zoning ordinance properly regulating land use and proscribing an automobile graveyard, being but two weeks from enactment and one month from effectiveness, had to be circumvented by quick action on their part. Their haste to occupy the property without any approval or permit, their bringing a used bus on the property as an office, their resourcefulness in painting a sign and placing a wrecked automobile on the premises, their consummation of but $109.50 of business all indicate the lack of good faith required by these cases. On the contrary, they illustrate a contrived series of maneuvers designed to circumvent a duly authorized ordinance so as to perpetuate a nonconforming use after the effective date of the ordinance. This planned circumvention evidencing bad faith becomes most apparent when it is recognized that all this took place in the face of an existing ordinance not yet set aside which prohibited this activity and before the appellees had obtained legal title to the property. No doctrine of fairness can be invoked to support appellees' position under these circumstances. Hence, the decree of the lower court is reversed and the record returned to the lower court for the entry of a decree in conformity with this opinion.

Decree reversed at appellees' cost.

Mr. Justice ROBERTS concurs in the result.