## Barrett v. Tredyffrin Township Zoning Board of Adjustment

*William H. Rivoir, Jr.*, for appellants.
*Richard Reifsnyder*, for appellee.

GAWTHROP, P. J., March 31, 1967. — This is an appeal from the decision of the Zoning Board of Adjustment of Tredyffrin Township sustaining the action of the township zoning officer in refusing to grant a permit for construction of six additional apartment buildings, each containing 11 dwelling units, on certain lands situate in an R-4 residence district under the township zoning ordinance. Appellants seek to establish their right to a permit on the basis of a variance or of either the existence of or the right to extend a nonconforming use. No evidence was taken before the court, and we are required to determine on the record made before the board whether it committed error of law or an abuse of discretion: Upper Providence Township Appeal, 414 Pa. 46. A careful review of this record convinces us that it did not.

A review of the background of this case seems appropriate. In 1959, appellants purchased almost seven acres out of a larger tract of about 11 acres of land situate in an R-3 residence district. The seven acre and 11-acre tracts both abutted on the south side of Central Avenue in Paoli. The larger tract was bounded on the east by lands of Burroughs Corporation, zoned C-1 commercial district, on the south by the main line of the Pennsylvania Railroad, and on the west by lands of Tredyffrin School District, zoned R-3 residence district. At that time, apartment house use was not permitted in R-3 residence districts, but in R-4 residence districts, apartment houses, other than group-type apartments, were permitted. By amendment to the zoning ordinance on June 6, 1960, group type apartments became a permitted use in R-4 districts and, by further amendment enacted June 27, 1960, the seven acre tract was reclassified as an R-4 residence district. Appellants applied for and obtained a building permit to construct thereon 124 garden-type apartments. After that permit was invalidated by this court,

appellants purchased the balance of the 11-acre tract, and the township, by amendment to the ordinance enacted September 11, 1961, reclassified that balance as an R-4 residence district. Appellants again applied for and obtained a permit, issued January 26, 1962, to erect 11 garden-type apartment buildings containing 124 apartment units on the 11 acre tract. That permit also was invalidated by this court, but on appeal, the Supreme Court of Pennsylvania, in Cleaver v. Board of Adjustment, 414 Pa. 367, decided May 11, 1964, reversed and held that the topography, location and characteristics of the property justified the reclassification and rezoning.

In the meantime, the township, on December 30, 1963, had further amended the ordinance as to R-4 residence districts restricting apartment house use to "an apartment house or multiple dwelling for not more than six families, not to include semi-detached or row type structure" and increasing the dwelling unit area requirements therefor from the former 1,700 to 2,900 square feet. Soon after the Supreme Court's decision, appellants commenced construction of 121 apartment units under the permit issued January 26, 1962, and they were nearing completion at the time of the board of adjustment's hearing on the present application. No question has been or could be raised as to the propriety of that construction. The issue before us is whether appellants may now proceed to erect 66 additional apartment units, each with a unit area of only 1,700 square feet, in 6 additional garden-type buildings on the remainder of the 11-acre tract.

Considering first the variance requested in the appeal to the board of adjustment, it is clear that to be entitled to a variance, appellants have the burden of proving clearly that the impact of the ordinance on their property, as opposed to its effect on all properties similarly zoned, creates an undue and unneces-

sary hardship unique to the particular property, not mere economic or financial hardship to the owners, and that the grant of a variance will not be contrary to the public interest: Luciany v. Zoning Board of Adjustment, 399 Pa. 176; McClure Appeal, 415 Pa. 285; Jasy Corporation v. Board of Adjustment, 413 Pa. 563; DiSanto v. Zoning Board of Adjustment, 410 Pa. 331. Mere economic or financial hardship of itself is not sufficient to entitle the owner to the grant of a variance, particularly where the property involved is bought with the conditions which impose the economic hardship known to the purchaser: Dishler v. Zoning Board of Adjustment, 414 Pa. 244; Cooper v. Board of Adjustment, 412 Pa. 429; Crafton Borough Appeal, 409 Pa. 82. The power to grant a variance must be exercised sparingly and only under peculiar and exceptional circumstances: Crafton, supra, at page 87; Sgarlat v. Kingston Borough Board of Adjustment, 407 Pa. 324, 330.

The impact of the December, 1963, amendment upon this property created nothing more than economic hardship. Presence of the railroad right of way was known, and the presence of Philadelphia Suburban Water Company's high pressure line through the southerly part of the 11-acre property either was known or should have been known, both when the original seven acres and subsequently when the balance of the land was purchased. The manner in which the original seven acre tract was carved out of the whole of 11 acres indicates the purchasers' intention and effort to avoid the obstruction of that water line for building construction purposes. Nothing in the December, 1963, amendment prevents apartment use of the remaining land not yet built upon. From the plot plans in the record, the water line is 90 feet north of the southern boundary of the tract. Thus, even if the whole of that southerly strip is presently unusable

for apartments, it had always been unusable for that purpose. But for the full width of the tract, there remains an area north of the water line which, at its narrowest point opposite the nearest existing building, is at least 240 feet wide and is considerably wider on both the east and west sides of that building. It is by no means clear on this record that certain sewer installations built in 1964, in addition to those needed strictly for the existing 121 units, are not usable for apartments built in conformity with the present ordinance. Appellants' hardship, therefore, is economic only, rather than unnecessary, undue and unique to the property itself. They can erect conforming apartments on the remainder of their tract, but not so many of them, nor in semi-detached clusters, nor perhaps as cheaply as the existing apartments. On its facts, this case is quite similar to Cooper v. Board of Adjustment, supra, where refusal to grant a variance was affirmed. There, as here, drainage and sewerage problems and the unavailability for dwelling house construction of 40 percent of the land along one boundary due to its downward slope were held to constitute mere economic or financial hardship, and not the requisite "Unnecessary hardship, unique to the particular property" which would justify the grant of a variance.

Appellants rely primarily upon their claim of right to a nonconforming use to erect the additional 66 units in 6 additional garden-type apartment buildings, each with a 1,700 square foot unit area. Beyond doubt, their right to construct the existing 121 units on the 11-acre tract was validated by the Supreme Court's decision. They assert, however, that their right to construct the original 121 units amounts in law to the establishment of the right to make garden-type apartment use of the whole 11 acres under the terms of the ordinance in effect when their permit issued in January, 1962, or, in the alternative, if the proposed 66

additional units are not permissible on that ground, nevertheless they are permissible as an extension of an existing use made nonconforming by the December, 1963, amendment.

"It must be borne in mind that nonconforming uses are in conflict with the over all purpose of securing fair and proper zoning; such uses should not be expanded beyond the necessity for protecting the original property interest. The rule as to nonconforming uses was evolved as a conceived element of due process, it is not a special privilege or exemption from the scheme of zoning": Molnar v. George B. Henne & Co., Inc., 377 Pa. 571, 581.

We shall consider first the extent of the nonconforming use as originally established. It is clear under Cleaver Appeal, supra, that the effect of the December, 1963, amendment was to establish a nonconforming use to the extent of the original 121 existing units. The question is whether the additional 66 units were included within that nonconforming use. Appellants stress their original "intent" to devote the whole 11-acre tract to apartment use of the same character and density as the existing use. They rely largely on Haller Baking Company's Appeal, 295 Pa. 257, in support of their position. In that case, at page 262, it was said: "The use for which the property is adapted need not be in actual operation at the time of the adoption of the ordinance, if the *attending circumstances connected with the property* bear out the conclusion that the owner intended to use the property for that purpose." (Italics supplied). Haller dealt with whether or not a nonconforming use in fact existed. So also did Cook v. Bensalem Township Zoning Board of Adjustment, 413 Pa. 175; Cheswick Borough v. Bechman, 352 Pa. 79; and Harrisburg v. Pass, 372 Pa. 318. Those cases are, therefore, clearly distinguishable, because here such a use admittedly does exist.

But if the owner's intent is the key to the situation, is subjective intent sufficient, or must there be objective evidence of such intent?

In Cook, supra, at page 179, it was said: "Advanced as may be the science of interpretation of psychic phenomena, the courts cannot be expected, nor are they equipped, to look into a person's mind to ascertain his thoughts and intentions. Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind". What evidence is there outside appellants' minds of their initial intention to build garden-type apartments beyond the number originally applied for?

The first application was for a permit to build 124 units on seven acres. The second application was to build 124 units on 11 acres. Although additional units apparently could have been accommodated on the original seven acres, only 124 were requested. All of the proposed additional 66 units could have been placed on the 11-acre tract, but they were not included in any application. Appellants' only reason for not including them in the second application is that they then had no firm intention to build the additional units; unless and until they found that the first 124 units would be successful, they neither intended to build them nor could they arrange to finance their construction. The sole objective evidence offered to prove prior intent to construct the 66 additional units is of the construction after May 11, 1964, of some sewer facilities beyond those strictly needed for accommodation of the original 124 units. That fact occurred only after the impact and in spite of the December, 1963, amendment and is irrelevant.

Appellants further contend that even if the addi-

tional 6 buildings containing 66 units are not included in the nonconforming use, they at least have the right to extend the nonconforming use to include them. A long line of cases holds that a nonconforming use cannot be limited to its precise magnitude existing at the effective date of a zoning ordinance, but may be increased in extent by natural expansion and growth of trade: Peirce Appeal, 384 Pa. 100; Blanarik Appeal, 375 Pa. 209; Humphreys v. Stuart Realty Corporation, 364 Pa. 616. However, the cases which determine a lawful extension of a nonconforming use appear to fall within three groups: (1) those in which an extension was made within a nonconforming building or a tract already in actual use as part of a nonconforming use: Davis Appeal, 367 Pa. 340; Firth v. Scherzberg, 366 Pa. 443; (2) those in which the extension is an addition to a nonconforming building or to a tract already in actual use: Mack Zoning Appeal, 384 Pa. 586; Heidorn Appeal, 412 Pa. 570; Upper Darby Township Appeal, 391 Pa. 347; Philadelphia Art Alliance v. Philadelphia Zoning Board of Adjustment, 377 Pa. 144; and (3) those in which the extension is the erection of a structure to enclose a nonconforming open air activity: Peirce Appeal, supra; Eitnier v. Kreitz Corporation, 404 Pa. 406; E. C. Schneider, Inc. v. Zoning Board of Adjustment, 389 Pa. 593. The facts in the present case do not fit into any of the above categories; nor does the record show any demand for the additional units making them "reasonably necessary in order to accommodate the requirements of the natural growth of the business": See Peirce Appeal, supra. Therefore, appellants' application does not qualify as a lawful extension of a nonconforming use.

No Pennsylvania case we have found involves a similar factual situation. However, if appellants have the right to construct the proposed additional units,

the effect of so holding is to forbid a municipality to restrict further its lot area or density regulations, although no overt act indicating an intention to build additional nonconforming structures has theretofore been done. To carry appellants' argument to its logical conclusion, if an owner of 10 acres of land, without more, constructed 5 houses, each on a one-acre lot conforming to zoning requirements, and thereafter the municipality increased the minimum lot area to two and one half acres, the owner would thereafter still be able to construct 5 more houses, each on a one acre lot. We cannot conceive this to be the law.

The principle of "vested rights" referred to in the briefs but not seriously argued has no application here: Penn Township v. Yecko Bros., 420 Pa. 386.

And now, March 31, 1967, the decision of the Zoning Board of Adjustment of Tredyffrin Township is affirmed.